1  **PATRICE A. MISSUD** (Ca. SBN 219614)
   91 San Juan Ave.
2  San Francisco, CA, 94112
   415-584-7251 ph/fax
3  missudpat@yahoo.com

4  PLAINTIFF in pro per, and
   Attorney for Julie D. Missud

5

6

7

8         UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT
               OF CALIFORNIA, SAN FRANCISCO  DIVISION
9                   UNLIMITED CIVIL JURISDICTION

10
   PATRICE A. MISSUD,
11 JULIE D. MISSUD                          Case No.

12
   Plaintiffs
13
                                  **COMPLAINT FOR**: FRAUDULENT
14                                INDUCEMENT, FRAUDULENT
                                  CONCEALMENT, INTENTIONAL
15                                MISREPRESENTATION, BREACH OF
                                  FIDUCIARY DUTY, BREACH OF CONTRACT,
16                                PERSONAL INJURY, VIOLATION OF USC
                                  TITLE 18 SECTION 1513, DECLARATORY
17                                RELIEF AND  RESTITUTION.
                                  -DEMAND FOR JURY TRIAL-
18 vs.

19
                                       **UNLIMITED**
20

21
   D. R. HORTON, INC.;
22 DHI MORTGAGE COMPANY, LTD, LP.;
   DONALD HORTON; DONALD TOMNITZ;
23 MICHAEL MASON; DANIEL CALLIHAN;
   ANNIE SCHANKIN; JAMES FRASURE;
24 DOES 1-200

25 Defendants
   _____
26
   PLAINTIFFS, PATRICE  A. MISSUD AND JULIE D. MISSUD, ALLEGE an action based on
27
   FRAUDULENT INDUCEMENT, FRAUDULENT CONCEALMENT, INTENTIONAL
28

MISREPRESENTATION, BREACH OF FIDUCIARY DUTY,  BREACH OF CONTRACT,

PERSONAL INJURY- NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL

DISTRESS, VIOLATION OF U.S.C. TITLE 18 SECTION 1513, DECLARATORY RELIEF

AND  RESTITUTION, and caused by the defendants.

**JURISDICTION AND BACKGROUND:**

A. The Federal District Court of Northern California is a court of general jurisdiction and these

causes of action come under its authority by way of diversity and subject matter jurisdiction,

violation of federal laws.  The tort and fraud actions were properly filed by the California plaintiffs

within their respective statute of limitations in San Francisco's Superior Court, which has

conclusively determined in January and February of 2007, following several motions to quash,

that all defendants are residents of Nevada and/or states other than California.  The breach of

contract is originally filed in this Court, within the four year statute of limitations, and based in the

violation of a multitude of federal laws including RESPA, U.S.C. Title 12, section 2601 et seq.,

Truth in Lending, Title 15 U.S.C. Section1601 et seq., and other Federal Codes.  The U.S.C.

Title 18 federal whistle blower claims are properly and originally filed in this court.

B. Personal jurisdiction over D. R. Horton Inc., and DHI Mortgage Company Ltd., LP is

appropriate as they are residents and do business within the Ninth Circuit in Nevada.  Personal

jurisdiction over defendants Mason, Callihan, Schankin and Frasure is appropriate as they are

residents of Nevada and were at all times agents of the corporate defendants.  Personal

jurisdiction over Texas residents and defendant corporate officers Horton and Tomnitz comes by

way of violation of federal laws in creating and implementing corporate policy having an illegal

impact in 27 states, including Nevada and California.

C. Original jurisdiction by this Federal Court is appropriate by way of defendants' violating a

variety of Federal predatory lending laws, and U.S.C., Title 18, Section 1513.   Several attempts

to interfere with plaintiff Patrick Missud's professional California employment and Bay area

businesses were made from the offices of defendants' counsel located in Oakland, California, and

at the direction of the defendants in retaliation for plaintiff's supplying truthful information

regarding the violation of Federal laws, and at the request of and to state and federal authorities.

D. As an alternative to personal jurisdiction, the plaintiffs request pendant, ancillary and/or supplemental jurisdiction over all the defendants and for all the non federal claims.

E. All of the individual defendants at the time of the fraudulent transactions were corporate directors, officers, or agents of D. R. Horton Inc. and/or DHI Mortgage Company, Ltd, LP.

F. An accompanying evidentiary file has been concurrently filed in support of and with this complaint.

**INTRADISTRICT ASSIGNMENT:**

F. As per Civil L.R. 3-2(c), all civil actions which arise in the counties of San Francisco shall be assigned to the San Francisco or Oakland Division.  San Francisco, California is the proper venue for these actions as it is where the fraudulent conduct, contract, all addendums, and closing and title transfer documents were entered into and/or executed under notary seal, causes of action accrued, tortious effects of the fraud and personal injury were experienced, and great majority of witnesses reside and records exist.  Further, violation of whistle blowing laws under U.S.C., Title 18, Section 1513(e), namely intentional interference with the livelihood of a Federal informant, occurred within the State of California, County of San Francisco.

G. This filing is not a class action.  A separate federal class action based in federal law is being prepared and will be filed on behalf of other similarly aggrieved individuals.

H. Based on investigations beginning since late May of 2006 which have yielded upwards of 250 other consumers from at least five different states who have also been similarly defrauded from at least early 2004 until early 2007,  and discovery of certain Defendants, the Plaintiffs allege upon belief and information, the information having already been forwarded to over 50 state and federal governmental agencies including the DOJ, HUD, Board of Governors, FTC, FBI, SEC, and 27 state Attorneys General all of  the following:

## I. NATURE OF THE ACTION

1. This complaint concerns a massive fraud perpetuated on the Plaintiffs in particular and other unsuspecting members of the national public.  Defendants sold the Plaintiffs and others, homes which were illegally conditioned on the purchase of Defendants' financial services through affiliate CH Mortgage, now DHI Mortgage Company, Ltd. [DHI].  The Defendants misrepresented in

their Contract that the Plaintiffs were not required to use the Defendant's wholly owned

subsidiaries and affiliates in conjunction with the purchase of their property located at 1353

Romanesca Drive, Henderson, Nevada, 89052 [Property].  Defendants and Defendants'

employees perpetuated this fraudulent scheme on the Plaintiffs so that the Defendants could add

to their roughly $250 million yearly revenue through their mortgage lending operations which in

part generate said revenue by selling the servicing rights to third parties, such as Countrywide

Mortgages, and at the expense of the Plaintiffs.

2. Plaintiffs are individuals who purchased their primary residential home in the Anthem Heights

subdivision of Henderson, Nevada, approximately 20 miles from their sister and family who reside

in neighboring Las Vegas.  Earnest money totaling $7598.00, was received by D. R. Horton on

November 22, 2003, and the contract for the Property was entered into on November 24, 2003

[Contract].  The Contract and each and every phone call, fax, page, application, document,

addendum and change order was received, executed and funded from the Plaintiffs' then primary

residence from November 2003 to March 2004 and located in the County of San Francisco.  The

final closing documents transferring title for the Nevada Property were executed within the City

and County of San Francisco under notary seal.

3. The Defendants fraudulently concealed, failed to disclose and misrepresented that the purchase

of the Property was conditioned on the sale of Defendants' financial services.  Plaintiffs, in

California, were fraudulently induced by the Defendants in Nevada into the Contract which

verbatim and in form provided that, "Buyer(s) is NOT required to use CH Mortgage I, Ltd as a

condition of the purchase of the Property from D. R. Horton, Inc. or as a condition of the

application for, settlement of, a mortgage loan on the Property in connection with this purchase.

THERE ARE OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH

SIMILAR SERVICES."  This clause's incorporation was required under Federal law.

4. Defendants willfully and intentionally forwarded false information to the Plaintiffs' outside

mortgage lender, Wells Fargo [Lender] on at least three occasions in an effort to fraudulently

cancel the Contract.  The Defendants with scienter forwarded the false information to Plaintiffs'

Lender untimely and in an effort to fraudulently cancel the Contract.  The Contract provided that

the "Seller requires that Buyer(s) shall cause loan documents to be available from the Lender within twenty four hours of written request from Seller.  Seller further requires that funding of the loan occur within twenty four hours receipt by the Lender of executed loan documents.  It is Buyer's responsibility to ensure the performance of an outside Lender specific to these requirements."  The Contract further stipulated that "Upon any default on the part of Buyer(s) of any terms or conditions of the Contract including without limitation, Buyer(s)'s failure to timely execute papers or ....timely close escrow that the Seller may, at its sole option, forfeit and terminate the Contract, in which event Seller shall declare the Contract forfeited , and all rights of Buyer(s) hereunder shall thereupon cease and terminate and all sums of money paid hereunder, including but not limited to Option Deposits and Earnest Money, shall be forfeited to and retained by Seller as liquidated damages."  Plaintiffs' Lender was on three occasions unable to calculate the total sales price of the home because of the false information forwarded late by the Defendants.  The false information and delays resulted in a nine day late escrow for which the penalty was forfeiture of nearly $10,000 in cash as well as the home which had appreciated approximately $60,000 from the time of Contract signing.

## II. THE PARTIES

**Plaintiffs**

5. Plaintiffs Patrice A. Missud and Julie D. Missud are residents of San Francisco, California.  They purchased, as husband and wife, the Property in Henderson, Nevada in March of 2004.  This Property was located at Lot 8 of the Anthem Heights sub division, in the Del Webb Community, also known as 1353 Romanesca Drive, Henderson, Nevada, 89052.  The purchase price was $402,120.00 without upgrades.

6. Plaintiff Julie Missud was and is a licensed and practicing patent attorney in the state of California and the federal courts.  Plaintiff Patrick Missud was at the time of the fraud from late November 2003 through March 2004 a self employed, licensed, general building contractor dba Home Engineering and Missud Contracting, performing $65,000 of contracts within and around the County of San Francisco.  Plaintiff Patrick Missud from February 7-12, 2004, was also attending a patent bar preparation course to become a licensed and practicing patent attorney in

1  the state of California and the federal courts.  At the time of the fraud, and for four weeks, the

2  Plaintiffs were damaged as a result of the interference and effects that the fraud had on Mr.

3  Missud's executory general building contracts, Mr. Missud's preparation for the patent bar and

4  extraordinary efforts and personal travel to Nevada required to prevent the illegal forfeiture of

5  money deposits and Property from illegal Contract cancellation.

6  **Corporate Defendants**

7  7. Defendant D. R. Horton Inc. [D.R. Horton, or Company] is incorporated in Delaware, with its

8  headquarters located in Fort Worth, Texas.  D.R. Horton is a homebuilder which constructs and

9  sells single family homes.  D. R. Horton is a California General Building Contractor and doing

10  business under General Building license numbers B- 634710, 750190, 765023, 770126, 814647,

11  873087.  D. R. Horton is a California General Engineering Contractor and doing business under

12  General Engineering license number A- 750190.  In its capacities as a California State

13  Contractors' Board Qualified General Building and Engineering Contractor, D. R. Horton is

14  minimally building in 32 Municipalities throughout California, including Oakland and Palo Alto.

15  8. Defendant DHI Mortgage Company, Ltd. is a Texas limited partnership, and a wholly owned

16  subsidiary of D. R. Horton Inc.  Its general partner is DHI Mortgage GP, Inc., which is qualified

17  to do business in California.  DHI Mortgage Company Ltd. dba DHI Mortgage Company, Ltd,

18  LP conducts business in California and Nevada.

19  9. On or about February 19, 2004, D. R. Horton Inc. received Plaintiffs' certified, return receipt

20  letters detailing the extensive fraud regarding the transaction for the Property.  The USPS has

21  verified D. R. Horton Inc.'s receipt of certified mailings numbered 700331100001-5943-6708,

22  6715, -5944-6400, 6448, 6479, 6516, 3621, 3638, 3652.....On October 1, 2004, the paralegal to

23  David T. Morice [Morice], who is the Vice President and Corporate Legal Counsel to D. R.

24  Horton Inc., acknowledged receipt of Plaintiffs' certified notifications of the fraud in a response

25  letter to the Southern Nevada Better Business Bureau.  On March 29, 2005, Morice, the

26  Corporate Legal Counsel and individual with the utmost responsibility in preventing fraud and

27  ensuring conformance with business ethics and the law, directly received a certified, return receipt

28  letter dated March 23, 2005, which extensively detailed the fraud regarding Plaintiffs' transaction,

1  and demanded that all agents involved in the fraud be terminated as per Company policy.  The

2  United States Postal Service  has verified Morice's receipt of certified mailing number

3  7004116000071050-6352.  On May 11, 2005, D.R. Horton Inc.'s Las Vegas Corporate Legal

4  Counsel again acknowledged receipt of the March 23, 2005 letter and requested further

5  instructions as to how to proceed.  According to the *Corporate Code of Business Conduct and*

6  *Ethics* at D. R. Horton Inc., under *Obligations to Report Non-Compliance*, "If you have any

7  reason to believe that someone has violated the guidelines set forth in this Code of Business

8  Conduct and Ethics, or has otherwise acted unethically or unlawfully, you must report such

9  concerns to management."  Under *Violations of this Code*, "In instances in which the Board or

10  the Company has reasonable grounds to believe an employee has violated the terms of this Code,

11  the Board or the Company will investigate the alleged violation and may suspend the

12  employee....Further, in situations in which the Company identifies Code violations that constitute

13  violations of applicable law, the Board or the Company may be required to report such violations

14  to the appropriate authorities."  According to the *Corporate Governance Principles* at D. R.

15  Horton Inc., under *Compliance with Law and Company Policy*, it is the responsibility and duty of

16  the Board of Directors [Board] to ensure that "processes are in place for maintaining the integrity

17  and reputation of the Company, compliance with law and Company policy...and the integrity of

18  relationships with customers," and under *Concern Reporting*, "Any person who has a legitimate

19  concern about the Company's conduct may contact Corporate Counsel...and all outstanding

20  concerns will be reported to the directors as appropriate."  Rather than investigating the fraud and

21  agents involved, and after receiving plaintiffs' numerous detailed notifications of the fraud, D. R.

22  Horton has promoted Defendants Mason and Callihan.  Several additional consumers were found

23  during the May investigations, who were also defrauded naming these same corporate and

24  individual defendants in their declarations, and subsequent to March 2005.  Dozens of additional

25  consumers were found during early 2007 investigations, who were also defrauded naming these

26  same corporate defendants and other unnamed agents.

27  **Individual Defendants**

28  10. Defendant Donald Horton is the Chairman of the Board of Directors of D. R. Horton Inc.  As

of March 2005, defendant Donald Horton received notice from the Vice President and Corporate

Legal Counsel Morice as per the *Corporate Code of Business Conduct and Ethics* as well as

*Corporate Governance Principles* that there was extensive fraud regarding Plaintiffs' transaction

and with the strong possibility that other consumers were being similarly defrauded. Defendant

Donald Horton did nothing to ensure compliance with the law and Company policy because

Plaintiffs' investigations regarding defendant D. R. Horton has, at the time of this filing, found

dozens of additional consumers across the nation who had been defrauded much in the same way

as Plaintiffs had, within the two years from March 2005, until early 2007, and after detailed

notification of the fraud. It is Plaintiffs' contention that Defendant Donald Horton had knowledge

of the fraud prior to the Plaintiffs' Contract signing for the Property in late November 2003, and

had intentionally sanctioned the alleged illegal conduct herein.

11. Defendant Donald Tomnitz [Tomnitz], is the Vice Chairman of the Board of Directors,

President, and CEO of D. R. Horton Inc. As of March 2005, defendant Donald Tomnitz received

notice from the Vice President and Corporate Legal Counsel David Morice as per the *Corporate*

*Code of Business Conduct and Ethics* as well as *Corporate Governance Principles* that there was

extensive fraud regarding Plaintiffs' transaction and with the strong possibility that other

consumers were being similarly defrauded. Defendant Donald Tomnitz did nothing to ensure

compliance with the law and Company policy because Plaintiffs' investigations, at the time of this

filing, have minimally found dozens of additional consumers across the nation who had been

defrauded much in the same way as Plaintiffs had, within the two years from March 2005 until

early 2007, and after detailed notification of the fraud. It is Plaintiffs' contention that Defendant

Tomnitz had knowledge of the fraud alleged herein prior to the Plaintiffs' Contract signing for the

Property in late November 2003, and had intentionally sanctioned the alleged illegal conduct

herein. As of April 19, 2007, Tomnitz's intent is to still aggressively and fraudulently market DHI

financial services for the sake of meeting wall street expectations. In a Reuters article he has

stated that "if a buyer is warm and has a pulse, [he] wants to put them on paper," and regardless

of buyer eligibility. Should the prospective buyer not successfully obtain financing through at least

DHI, then the buyers' deposits will be forfeited.

12. Defendant Michael Mason [Mason] was at the time of the fraud the agent and employee of DHI Mortgage Company, Ltd. [DHI], and the Plaintiffs' loan officer in charge of processing the inside lender loans for defendants DHI and D. R. Horton.  As a licensed state of Nevada mortgage broker, Mason had the duty to not deal with any party to a real estate transaction in a manner which is deceitful, fraudulent or dishonest, and as per NRS 645B170 partially entitled *Fiduciary Duty of a Mortgage Broker*, "The mortgage broker has a fiduciary duty to each debtor with respect to the money in an impound trust account."      It is Plaintiffs' contention that Mason breached his duties under Nevada law and took part in the interstate fraud along with the other Defendants, thereby violating California and Federal laws as well.

13. Defendant Daniel Callihan [Callihan] was at the time of the fraud the agent and employee of DHI Mortgage Company, Ltd. [DHI], and supervisor to the Plaintiffs' loan officer and Defendant Mason, in charge of processing the inside lender loans for Defendants DHI and D. R. Horton.  As a licensed state of Nevada mortgage broker, Callihan was bound by Nevada Revised Statutes Section 645B.460 entitled *Supervision by Mortgage Broker; Requirements; Regulations* which state in part:

> 1. A mortgage broker shall exercise reasonable supervision over the activities of his mortgage agents.  Such reasonable supervision must include, as appropriate:
> a. The establishment of a system to review, oversee and inspect the activities of his mortgage agents; and
> b. The establishment of a system to review, oversee and inspect the activities of his mortgage agents, including without limitation:
> > 1. Transactions handled by his mortgage agents pursuant to this chapter;
> > 2. Communications between his mortgage agents and a party to such a transaction;
> > 3. Documents prepared by his mortgage agents that may have a material effect upon the rights or obligations of a party to such a transaction.

It is Plaintiffs' contention that Callihan breached his duties under Nevada law and took part in the interstate fraud along with the other Defendants, thereby violating California and Federal laws as well.

14. Defendant Anne Schankin [Schankin] was at the time of the fraud the agent and employee of D. R. Horton Inc. and the sales agent and manager in charge of the sale of Plaintiffs' Property. As a then licensed state of Nevada real estate broker, Schankin had the duty to "not deal with any party to a real estate transaction in a manner which is deceitful, fraudulent or dishonest." [NRS

645.3205]. On March 22, 2004, and just over one month after the fraud alleged herein, Schankin

was "disassociated" from D. R. Horton Inc. NRS 645.670 reads in part:

> "In the event of the revocation or suspension of the license issued to a manager or to any officer of a corporation, the corporation shall not conduct business unless the manager whose license has been revoked is severed and the offending officer is discharged and has no further participation in its activities."

It is Plaintiffs' contention that Schankin breached her duties under Nevada law and took part in

the interstate fraud along with the other Defendants, thereby violating California and Federal  laws

as well.

15. Defendant James Frasure [Frasure] was at the time of the fraud the agent and employee of D.

R. Horton Inc. and the supervisor to Schankin, the sales agent and manager in charge of the sale

of Plaintiffs' Property. As a licensed State of Nevada real estate broker, and the President of D.

R. Horton's Las Vegas Division, Frasure was bound by NRS 645.660, *Knowledge of associate or*

*employer of violation by licensee or employee; penalties*, which in part reads:

> "Any unlawful act or violation of any of the provisions of this chapter by any licensee is not cause to suspend, revoke or deny the renewal of the license of any person associated with the licensee, unless it appears to the satisfaction of the Commission that the associate knew or should have known thereof.  A course of dealing shown to have been persistently and consistently followed by any licensee constitutes prima facie evidence of such knowledge upon the part of the associate."

Frasure has come before the Nevada Departments of Business and Industry's Real Estate Division

Disciplinary Board on two occasions for disciplinary actions S06-07-01-01 and -02-02 regarding

brokering real estate without a license.  It is Plaintiffs' contention that Frasure had knowledge of

the fraudulent conduct by his associate and Defendant Schankin, and breached his duties under

Nevada law, and took part in the interstate fraud along with the other Defendants, thereby

violating California and Federal laws as well.

**The Doe defendants**

16. The true names of the Defendants sued herein as Does 1 through 200 [Doe Defendants], are

either unknown to Plaintiffs, or their specific role in the unlawful and wrongful conduct, scheme

and enterprise alleged herein is presently unknown to Plaintiffs, and therefore Plaintiffs sue the

Doe Defendants by such fictitious names.  Plaintiffs will seek leave to amend this complaint to

allege the true names and capacities of the Doe Defendants at such time as they have been ascertained.  Plaintiffs believe they will be able to identify Doe Defendants after appropriate discovery has been completed.

17. The Doe Defendants may include, but are not limited to, the directors, officers, managers, employees, agents, representatives, real estate agents, affiliates, and/or other persons or entities who engaged in, assisted, aided and abetted, or conspired with any of the Defendants in the commission of any part of the unlawful conduct, scheme, and/or enterprise alleged herein.

18. The Defendants shall be collectively referenced in this complaint as the "Defendants."  Unless stated otherwise, "Defendants" shall also mean and include the plural and singular, and will include all of the Defendants collectively, and any of them individually.

**Allegations of Concerted Action**

19. At all relevant times, Defendants pursued a common course of conduct, acted in concert with one another, and conspired with one another to accomplish the offenses complained of herein, and performed acts and concealed and/or misrepresented material information, in furtherance thereof. In addition to the wrongful conduct alleged herein, which gives rise to Defendants' primary liability, Defendants further aided and abetted, and knowingly assisted one another, in perpetrating the illegal and wrongful conduct complained of herein.

20. Whenever this complaint alleges an act, deed or transaction by a corporation, partnership, or other business entity, the allegation means that the corporation, partnership, or other business entity engaged in the act, deed or transaction by or through its owners, partners, directors, officers, managers, employees, agents, and/or representatives while acting within the course and scope of their employment, partnership or agency; were actively engaged in the management, direction, and/or control of the entity; and/or were transacting the entity's ordinary business or its affairs.

**DEFENDANTS' UNLAWFUL CONDUCT**

**Background**

21. As a result of fraudulent inducement, the Plaintiffs purchased the Property in Henderson, Nevada, from San Francisco, California.  The Property was purchased pursuant to a form

adhesion written sales agreement between the Plaintiffs and D. R. Horton Inc.  The agreement was entitled "Offer and Acceptance and Receipt for Deposit (Contract)" [the "Contract"].  The Contract included several disclosures which specifically stated and noticed the business affiliation between D. R. Horton and DHI, that there may be a financial benefit for referral from one to the other, and that the sale of the former's product was not conditioned on the sale of the latter's products.  Paragraphs 3, 5, 16, 18 and 19 further specified the Plaintiffs' duties regarding the execution of loan documents and the penalties for not adhering to the conditions.  In paragraph 18,  D. R. Horton Inc. reserved for itself the following clause: "Without limiting any other right of the seller herein, at law or in equity, it is expressly understood and agreed that each and every thing to be performed by Buyer(s) under the Contract shall be considered a condition.  Upon any default upon the part of the Buyer(s) of any terms or conditions of the Contract (including without limitation, Buyer(s) failure to timely execute papers...or timely close escrow)....Seller may, at its sole option, forfeit and terminate the Contract, in which event the Seller shall declare the Contract forfeited, and all rights of Buyer(s) hereunder shall thereupon cease and terminate and all sums of money paid hereunder, including but not limited to Option Deposits and Earnest money, shall be forfeited to and retained by Seller as liquidated damages."  In paragraph 19, under Timely Performance,   D. R. Horton Inc. reserved for itself the following clause: "Buyer(s) hereby acknowledges and agrees that time is strictly of the essence with respect to each and every term, condition, obligation and provision hereof applicable to Buyer(s) and that failure to timely perform any of the conditions, obligations or provisions hereof shall constitute a material breach of the Contract by Buyer(s) and a default under the Contract."

**Defendants' Deceptive Misrepresentation about Plaintiffs' Choice of Lenders**

22. In the Contract at paragraph 5, the "Buyer(s) is NOT required to use DHI Mortgage Company, Ltd., as a condition of the purchase of the Property from D. R. Horton Inc. or as a condition of the application for, or settlement of, a mortgage loan on the Property in connection with this purchase."  This clause was incorporated into the Contract as per federal antitrust, RESPA, TILA, and other federal lending laws enacted for the prevention of predatory lending.

**The Truth About the Plaintiffs' Choice in Lenders**

23. Plaintiffs had no choice in lenders.  Defendants illegally and fraudulently required the use of their affiliated lender and conditioned the sale of Property on the obtaining of financial services through DHI Mortgage Company, Ltd.  On November 24, 2003, Plaintiffs signed their home purchase Contract in California for the Property which required as a condition that plaintiff apply from California for a mortgage loan through the in house lender and defendant, DHI within five days of Contract signing.  Horton and its wholly owned affiliate DHI had a business relationship in which DHI "may provide Horton with a financial benefit."   The Defendants were to prepare Plaintiffs' $360,000 mortgage loan application and ensure that Plaintiffs accurately fulfilled their loan requirements for the benefit of both internal lenders and the Plaintiffs.  Had the Plaintiffs agreed to use the Defendants' inside lender, then the Defendants would have earned one point on the loan funds, as well as origination, closing and miscellaneous fees.  The Plaintiffs had over 30 interstate communications with the Defendants.  The first 28 communications resulted in the Plaintiffs' loan being "approved" on January 5, 2004 and then subsequently only "preliminarily" approved on January 30, 2004.  The last two communications were a 9 minute phone call from San Francisco to what is believed to be Defendant Callihan's direct extension in his office in Las Vegas at 702-407-2704 and a faxed copy of an outside lender loan acknowledgment sent to DHI also in Las Vegas, for a counteroffer on February 12, 2004 at 6:33 PM and 6:47PM respectively.  On that same date, February 12, 2004, time unknown, Defendants mailed interstate from Las Vegas to San Francisco a certified letter [Letter] claiming that Plaintiffs had "not completed lender requirements," and was devoid of any items requiring remedy, and further stated that Plaintiffs would forfeit thousands of dollars for failure to address those items.  Including the loan fees, on February 12, 2004, Defendants minimally had over a $75,000 incentive to fraudulently claim that Plaintiffs had breached the Contract for the Property.   On February 19, 2004, Mr. Missud signed for the certified, return receipt  letter from Nevada and within 3 ½ hours was admitted to the Daly City, California  Seton Medical Center emergency room experiencing severe aggravation of his congenital medical condition and suffering abdominal pain and nausea for which he was intravenously administered narcotics for approximately 4 hours.  At 1:30 PM, 27 minutes after being admitted to the emergency room, Mr. Missud contacted his Nevada realtor

1   Sharon Menary [Menary] and requested that she continue closing on the Property with his limited

2   participation in an attempt to save the $70,000.00.  On February 20, 2004, Menary attempted to

3   have Defendants sign a simple "Fungal and Mold Contaminant Disclosure-Waiver" but the "Seller

4   refuse[d] to sign."  From February 19, 2004 until early March, the Plaintiffs had forwarded

5   numerous letters describing the fraudulent activities to many state and federal agencies and other

6   organizations with hopes that they would intervene.  On February 24, 2004 Mr. Missud, still

7   under the influence of Vicodin and unable to complete his general building contracts or prepare

8   for the patent bar, was forced to fly from Oakland, California to McCarran airport in Las Vegas

9   to personally tender performance at the offices of United Title of Nevada to prevent Defendants'

10  anticipatory repudiation of the contract. Upon his return to California from Nevada that same

11  afternoon, Mr. Missud received yet another notice from his lender's loan processor at Wells Fargo

12  in San Diego that Defendants had again sent a fourth different "sales addendum" from their

13  offices in Las Vegas.  The Plaintiffs from their home and local post office, sent Defendants

14  another letter requesting cooperation and an accurate accounting of the final sales price for the

15  Property.  Internal Wells Fargo documents repeatedly indicate that all parties to the contract were

16  ready, willing, "urgent[ly]" trying and "rush[ing]" to close on or before the closing date of

17  February 22, 2004 -with the exception of the Defendants.  Among the penalties for a five day late

18  closing was Contract rescission.  On February 23, 2004 Defendants from Nevada sent Wells

19  Fargo in San Diego a finally correct "Final Sales Addendum" to supercede the last erroneous one,

20  and is the "sales addendum" which prompted Plaintiffs' last letter requesting cooperation.  On

21  February 27, 2004, five full days after the official closing date, Defendants left a recorded voice

22  message with the plaintiff in San Francisco, that they were "expedit[ing] closing."  Once the

23  documents were mailed from Nevada to California, the Plaintiffs executed the pre printed escrow

24  documents on March 2, 2004 at Chicago Title in San Francisco under notary seal from E.S.

25  VillaNueva, notary public of California, San Francisco County.  VillaNueva corrected the printing

26  on the documents by hand to accurately reflect that they had in fact been executed in California

27  rather than in Nevada.  Mr. Missud then for a second time that same week, and still under the

28  effects of Vicodin, flew interstate to Las Vegas to personally hand deliver the escrow documents

1   to Defendants' affiliated settlement provider, United Title of Nevada.  Escrow finally closed, but

2   these same documents had to once again be amended because they had been preprinted with the

3   anticipated February 22, 2004, closing date which had been nine days delayed as a result from all

4   of the misrepresented contract revisions slowly forwarded by the Defendants.  It was later learned

5   that on March 22, 2004, defendant Schankin, the sales manager in charge of the plaintiff's

6   Contract,  was "disassociated" from D. R. Horton.  One and a half years later, on October 5,

7   2005, in answer to Plaintiffs' complaint filed with, and an investigation by the Nevada Department

8   of Mortgage Lending, the Defendants stated that "as of February 12, 2004, Mr. Missud had not

9   completed all lender requirements as requested by DHI  Mortgage."  However, in a document

10  filed one week later, with the Superior Court of California on October 13, 2005, in Mr. Missud's

11  personal injury action against some of the same Defendants, the Defendants admitted that the

12  Plaintiffs' loan through DHI had in fact been completed, and that D. R. Horton "provides the in-

13  house lending option as a 'convenience' to home buyers but they can also use outside lenders if

14  they prefer."  Subsequent to his February 19, 2004 hospitalization and reason for the California

15  State personal injury action, Patrick Missud has passed dozens of additional kidney stones without

16  discomfort which is typical for his condition when in the absence of extremely stressful financial

17  situations or fraud.

18  24.  Also subsequent to the original breach of contract and fraudulent, tortious acts by the

19  Defendants, the Defendants have interfered with Patrick Missud's employment on numerous

20  occasions in contravention of Title 18 of the United States Code, Section 1513(e) which in part

21  states that "whoever knowingly, with the intent to retaliate, takes any action harmful to any

22  person, including interference with the lawful employment or livelihood of any person, for

23  providing to a law enforcement officer any truthful information relating to the commission of any

24  Federal offense, shall be fined under this title or imprisoned not more than ten years or both."  D.

25  R. Horton's Nevada based attorney David Jennings filed two complaints with the Nevada

26  Engineers' Board and Contractors' Board claiming that Patrick Missud was operating his business

27  illegally.  Patrick Missud is licensed in Nevada as a consultant for construction defects litigation,

28  #2005300638, and in California as a general building contractor, #697370.  Jennings also stated in

a separate letter dated August 18, 2006,  that he may have to file with the Nevada State Bar which "may result in disciplinary proceedings against [Patrick Missud] in other jurisdictions and could affect the status of [his] bar license in those other jurisdictions."  Patrick Missud is licensed with the California Bar #219614.  Four days later, on August 22, 2006, one of D. R. Horton's California attorneys, Leonard Marquez, filed a grievance with the California State Bar stating that Patrick Missud was "threatening D. R. Horton Inc. with criminal, administrative or disciplinary charges to obtain an advantage in a civil dispute."  None of the three professional organizations took disciplinary actions on the complaints.  The Nevada Engineers' and Contractors' Boards requested that Patrick Missud more clearly delineate which services that he is qualified for in Nevada vs. California in future correspondence with his Nevada neighbors, and the California Bar found no actionable violations.  The Engineers' Board's ruling is publicly available online when searching "Patrick Missud," and Jennings is listed as the complainant.  The Jennings complaint is a prima facie case of interference with Missud's lawful employment.  It is believed that all three complaints were filed in retaliation for Patrick Missud's continuing efforts in providing volumes of truthful information and contacts relating to the commission of federal offenses to and at the request of federal and state authorities.

## I. FIRST CAUSE OF ACTION: FRAUD IN THE INDUCEMENT

25. Plaintiffs hereby incorporate by reference Paragraphs 1 through 24 above as though fully set forth herein.

26. Defendants failed to disclose, intentionally omitted and/or fraudulently concealed the alleged adverse material information with full knowledge that it would have been important to Plaintiffs in making their decision about whether or not to purchase the Property from Defendants, that  the Plaintiffs would not be allowed to choose their own lender.

27. Defendants also knew the alleged adverse material information was information a reasonable person would have used in making a decision about whether or not to purchase the Property from the Defendants at all.

28. The Plaintiffs were completely unaware of the adverse material information alleged herein before they purchased the Property from the Defendants.

29. In reasonable reliance upon the uniform false and misleading statements and misrepresentations alleged herein, and without being able to evaluate or consider the adverse material information that Defendants failed to disclose and concealed from the Plaintiffs that they would not be allowed to choose their own lender, the Plaintiffs were fraudulently induced into purchasing their Property from the Defendants and subsequently, and to their detriment were damaged and incurred substantial expenses in efforts to save their deposits and Property from fraudulent and illegal forfeiture.

30. In reasonable reliance upon the uniform false and misleading statements and misrepresentations alleged herein, and without being able to evaluate or consider the adverse material information that Defendants failed to disclose, and concealed from the Plaintiffs that they would not be allowed to choose their own lender, the Plaintiffs were fraudulently induced into purchasing their Property from the Defendants and would, to their detriment, have had to pay additional tens of thousands in unnecessary, inflated and/or illegal; mortgage fees, interest rates, points, PMI, closing costs, title fees, and miscellaneous expenses.

31. Had the adverse material information alleged herein been disclosed to Plaintiffs, the Plaintiffs would not have purchased the Property from the Defendants, or would have demanded from Defendants assurances that their cash deposits and Property would not be fraudulently forfeited and cancelled.

32. Each of the Defendants was aware of the overall fraudulent scheme described herein, and knowingly and willfully provided substantial assistance to the other Defendants and the fraudulent scheme as alleged herein.  Therefore, each of the Defendants is liable to Plaintiffs as an aider and abetter of the fraudulent scheme.

33. Each of the Defendants knowingly agreed to combine and conspire together for the purpose of effectuating the fraudulent scheme alleged herein, and acted to further the completion of that scheme as described herein.  Therefore, each of the Defendants is liable to the Plaintiffs as a co-conspirator in connection with the fraudulent scheme.

34. As a direct result of the fraudulent conduct alleged herein, Plaintiffs were fraudulently induced to enter into the Contract for the Property with the Defendants.

35. As a direct and proximate cause of the unlawful conduct alleged herein, Plaintiffs have been harmed and have suffered, among other things, damages, pain and suffering, humiliation, and emotional distress.

36. As a direct and proximate cause of the fraudulent conduct alleged herein, Plaintiffs have incurred significant expenses, financial loss and consequential damages in an amount to be determined according to proof at the time of trial, and as requested in the Prayer.

37. As a result of the fraudulent inducement alleged herein, the agreements that Plaintiffs entered into with Defendants regarding provisions purportedly waiving the right to collect punitive damages and the Constitutional right to a jury trial, or any provisions calling for a judicial reference, mediation or arbitration of any disputes related to or arising from the Contract are void as a matter of law and public policy and are unenforceable.  As such, the Plaintiffs are entitled to pursue all of their rights and remedies as allowed by the laws of the State of California, in this Federal District Court.

38. Defendants engaged in the fraudulent conduct alleged herein with malice, fraud and oppression.  Defendants also acted with a wanton, willful and reckless disregard for Defendants' duties under the law, the rights of the Plaintiffs, and the effects Defendants' unlawful conduct would have on the Plaintiffs.  Accordingly, punitive damages are not only appropriate in this case, but should be awarded to Plaintiffs as a result of the egregious and fraudulent conduct alleged herein.  As a result, Plaintiffs seek punitive and exemplary damages as provided by California Civil Code Section 3294, in an amount sufficient to punish Defendants and to deter such conduct in the future.

WHEREFORE, Plaintiffs pray for relief as set forth below.

**II. SECOND CAUSE OF ACTION: FRAUDULENT CONCEALMENT**

39. Plaintiffs hereby incorporate by reference Paragraphs 1 through 38 above as though fully set forth herein.

40. As a result of the fraudulent conduct alleged herein, Defendants fraudulently concealed material adverse information from the Plaintiffs regarding the purchase of the Property from the Defendants.

41. Defendants made false and misleading statements with full knowledge that the statements were false or misleading when made as alleged herein that Plaintiffs would be allowed to choose their own lender and were "NOT required to use DHI Mortgage Company, Ltd. as a condition of the purchase of the Property from D. R. Horton Inc., or as a condition of the application for, or settlement of, a mortgage loan on the Property in connection with this purchase," as was stated on the purchase Contract entered into on November 24, 2003.

42. Defendants intentionally concealed the material adverse information alleged herein with the intent to defraud Plaintiffs.

43. Plaintiffs were unaware of the adverse material information alleged herein, and would not have acted as they did, had they known of the concealed material adverse information alleged herein.

44. As a direct and proximate cause of the fraudulent concealment alleged herein, Plaintiffs have been harmed and have suffered, among other things, damages, pain and suffering, humiliation, and emotional distress.

45. As a direct and proximate cause of the fraudulent concealment alleged herein, Plaintiffs are entitled to damages and equitable relief as prayed for below.

46. Defendants engaged in the fraudulent concealment alleged herein with malice, fraud and oppression. Defendants also acted with a wanton, willful and reckless disregard for Defendants' duties under the law, the rights of the Plaintiffs, and the effects Defendants' unlawful conduct would have on the Plaintiffs. Accordingly, punitive damages are not only appropriate in this case, but should be awarded to Plaintiffs as a result of the egregious and fraudulent conduct alleged herein. As a result, Plaintiffs seek punitive and exemplary damages as provided by California Civil Code Section 3294, in an amount sufficient to punish Defendants and to deter such conduct in the future.

WHEREFORE, Plaintiffs pray for relief as set forth below.

**III. THIRD CAUSE OF ACTION: INTENTIONAL MISREPRESENTATION**

47. Plaintiffs hereby incorporate by reference Paragraphs 1 through 46 above as though fully set forth herein.

48. As a result of the fraudulent conduct alleged herein, Defendants intentionally misrepresented material adverse information from the Plaintiffs regarding the purchase of the Property from the Defendants.

49. Defendants made false and misleading statements and misrepresented with full knowledge that the statements were false or misleading when made as alleged herein that Plaintiffs had "fail[ed] to complete lender requirements within agreement to obtain full loan approval," in their February 12, 2004 letter sent interstate, certified, return receipt.

50. Defendants made further false and misleading statements and misrepresented with full knowledge that the statements were false or misleading when made as alleged herein that Plaintiffs had "not completed all lender requirements as requested by DHI Mortgage," as was stated in answer to Plaintiffs' complaint and submitted to the Nevada Department of Mortgage Lending on or about August 1, 2005, in an attempted cover up to a governmental entity of the original fraud conducted on or prior to February of 2004.

51. Defendants intentionally misrepresented the material adverse information alleged herein and committed mail fraud, with the intent to defraud the Plaintiffs.

52. On or about November 22, 2003 and February 12, 2004, Plaintiffs were unaware of the falsity of the adverse material information alleged herein, and would not have acted as they did, had they known of the intentionally misrepresented adverse information alleged herein.

53. As a direct and proximate cause of the intentional misrepresentations alleged herein, Plaintiffs have been harmed and have suffered, among other things, damages, pain and suffering, humiliation, and emotional distress.

54. As a direct and proximate cause of the intentional misrepresentations alleged herein, Plaintiffs are entitled to damages and equitable relief as prayed for below.

55. Defendants engaged in the intentional misrepresentations alleged herein with malice, fraud and oppression.  Defendants also acted with a wanton, willful and reckless disregard for Defendants' duties under the law, the rights of the Plaintiffs, and the effects Defendants' unlawful conduct would have on the Plaintiffs.  Accordingly, punitive damages are not only appropriate in this case, but should be awarded to Plaintiffs as a result of the egregious and fraudulent conduct alleged

1  herein.  As a result, Plaintiffs seek punitive and exemplary damages as provided by California Civil
2  Code Section 3294, in an amount sufficient to punish Defendants and to deter such conduct in the
3  future.
4  WHEREFORE, Plaintiffs pray for relief as set forth below.
5  **IV. FOURTH CAUSE OF ACTION: BREACH OF FIDUCIARY DUTY**
6  56. Plaintiffs hereby incorporate by reference Paragraphs 1 through 55 above as though fully set
7  forth herein.
8  57. As per NRS 645B170 partially entitled *Fiduciary Duty of a Mortgage Broker*, "The mortgage
9  broker has a fiduciary duty to each debtor with respect to the money in an impound trust
10 account."  It is Plaintiffs/debtors' contention that Defendants breached their duties under Nevada
11 law and took part in the interstate fraud thereby violating California and Federal laws as well.
12 58. As a result of the fraudulent conduct alleged herein, Defendants fraudulently accounted for
13 the impounded trust funds and breached their fiduciary duties in claiming that Plaintiff/debtors had
14 failed to complete lender requirements, and concealed and/or misrepresented material information
15 from the Plaintiff/debtors and/or their Lender regarding the purchase of the Property and costs of
16 upgrades.
17 59. Defendants breached their fiduciary duties to the Plaintiff/debtors and made false and
18 misleading statements with full knowledge that the statements were false or misleading when
19 made as alleged herein that Plaintiffs loan through Defendants was incomplete as of February 12,
20 2004.
21 60. Defendants intentionally concealed and/or misrepresented the material information and
22 breached their fiduciary duties to the Plaintiff/debtors as alleged herein with the intent to defraud
23 Plaintiffs.
24 61. Plaintiff/debtors were unaware of the intentionally concealed and/or misrepresented material
25 information alleged herein, and that the Defendants had breached their fiduciary duties.
26 62. As a direct and proximate cause of Defendants' breach of their fiduciary duties to the
27 Plaintiff/debtors, and intentional fraudulent concealment and/or misrepresentation alleged herein,
28 Plaintiffs have been harmed and have suffered, among other things, damages, pain and suffering,

1  humiliation, and emotional distress.

2  63. As a direct and proximate cause of the Defendants' breach of their fiduciary duties to the

3  Plaintiff/debtors, and fraudulent intentional concealment and/or misrepresentation alleged herein,

4  Plaintiff/debtors are entitled to damages and equitable relief as prayed for below.

5  64. Defendants breached their fiduciary duties to the Plaintiff/debtors and engaged in the

6  fraudulent intentional concealment and/or misrepresentations alleged herein with malice, fraud and

7  oppression.  Defendants also acted with a wanton, willful and reckless disregard for Defendants'

8  duties under the law, the rights of the Plaintiff/debtors, and the effects Defendants' unlawful

9  conduct would have on the Plaintiff/debtors.  Accordingly, punitive damages are not only

10  appropriate in this case, but should be awarded to Plaintiffs as a result of the egregious and

11  fraudulent conduct alleged herein.  As a result, Plaintiff/debtors seek punitive and exemplary

12  damages as provided by California Civil Code Section 3294, in an amount sufficient to punish

13  Defendants and to deter such conduct in the future.

14  WHEREFORE, Plaintiffs pray for relief as set forth below.

15  **V. FIFTH CAUSE OF ACTION: BREACH OF CONTRACT.**

16  65. Plaintiffs hereby incorporate by reference Paragraphs 1 through 64 above as though fully set

17  forth herein.

18  66. Defendants breached their very own Contract of adhesion entered into on November 24,

19  2003, when they stated that Plaintiffs would be allowed to choose their own lender and were

20  "NOT required to use DHI Mortgage Company, Ltd. as a condition of the purchase of the

21  Property from D. R. Horton Inc., or as a condition of the application for, or settlement of, a

22  mortgage loan on the Property in connection with this purchase," a clause which was required

23  under Federal law.

24  67. The Plaintiffs fully performed under the terms of the Contract and had completed lender

25  requirements within agreement to obtain full in house loan approval by January 5, 2004, and were

26  in fact fully approved within the time limits imposed by the Defendants as admitted by court

27  documents filed in the California Superior Court on November 13, 2005.

28  68. The Plaintiffs informed the Defendants that they preferred an outside lender and would obtain

1   loan funding from Wells Fargo as was permitted by the Contract and Federal law.  The

2   Defendants breached the Contract and violated Federal law when they intentionally delayed and

3   interfered on many occasions with Wells Fargo in successful attempts to make them fail to timely

4   perform.  Failure to timely perform loan funding would have led to Plaintiffs' money deposits

5   forfeited and contract cancellation, but for Plaintiffs' tender of performance.

6   69. Defendants' breach of Contract and violation of the Federally mandated clause, has caused

7   Plaintiffs' damages in the form of several emergency business flights to tender performance,

8   interference with their businesses, increased medical costs and incidental and consequential

9   expenses.

10  70. As a direct and proximate cause of the breach of Contract alleged herein and in conjunction

11  with the fraud alleged supra, Plaintiffs have been harmed and have suffered, among other things,

12  damages, pain and suffering, humiliation, and severe emotional distress manifesting in physical

13  injury and near immediate hospitalization.

14  71. As a direct and proximate cause of the breach of Contract alleged herein, Plaintiffs are entitled

15  to damages and equitable relief as prayed for below.

16  72. The Defendants engaged in the breach of Contract alleged herein with scienter, malice, fraud

17  and oppression.  Defendants also acted with a wanton, willful and reckless disregard for

18  Defendants' duties to honor the Contract as written and under Federal law, the rights of the

19  Plaintiffs, and the effects Defendants' unlawful breach would have on the Plaintiffs.  Accordingly,

20  punitive damages are not only appropriate in this case, but should be awarded to Plaintiffs as a

21  result of the egregious breach and fraudulent conduct alleged herein.  As a result, Plaintiffs seek

22  punitive and exemplary damages as provided by California Civil Code Section 3294, in an amount

23  sufficient to punish Defendants and to deter such conduct in the future.

24  WHEREFORE, Plaintiffs pray for relief as set forth below.

25  **VI. SIXTH CAUSE OF ACTION: PERSONAL INJURY, INTENTIONAL INFLICTION**

26  **OF EMOTIONAL DISTRESS.**

27  73. Plaintiffs hereby incorporate by reference Paragraphs 1 through 72 above as though fully set

28  forth herein.

74. Defendants' act of sending Plaintiff Patrick Missud a fraudulent certified restricted delivery return receipt letter through the Federal mail, and misinforming him that he had forfeited his cash deposits and lost his home for a total loss of at least $70,000.00 because of his alleged failure to cooperate with the Defendants amounts to extreme and outrageous conduct.

75. Defendants knew that the statements within the certified letter that the Plaintiffs had "failed to fulfill lender requirements within the terms of the Contract" were fraudulent with the intent to cause the Plaintiffs severe emotional distress.

76. Defendants' knew that the statements within the certified letter that the Plaintiffs had "failed to fulfill lender requirements within the terms of the Contract" were fraudulent, and made with the intent to leverage and extort the Plaintiffs into further contracting with the Defendants' financial services, for fear of losing $70,000.00.

77. Defendants' extreme and outrageous conduct of making fraudulent statements which ultimately would have resulted in large financial losses, and sending them to Plaintiff Patrick Missud in a restricted delivery Federally certified letter caused him severe emotional distress, aggravating his normally benign congenital condition which required immediate medical intervention within three hours receipt of the letter.

78. Plaintiff Patrick Missud suffered excruciating pain for 5 days because of the kidney stone which had lodged in his abdomen which normally would have passed without complication in the absence of distress brought on by a large and impending financial fraud.

79. As a direct and proximate cause of the Defendants' extreme and outrageous conduct of making fraudulent statements which would ultimately have resulted in over $70,000.00 in losses, noticing him of such in a Federally certified letter, and both of which resulting in near immediate hospitalization, Plaintiff Patrick Missud is entitled to damages and equitable relief as prayed for below.

80. Defendants engaged in the fraudulent intentional extreme and outrageous conduct alleged herein with malice, fraud and oppression.  Defendants also acted with a wanton, willful and reckless disregard for Plaintiff Patrick Missud's health and safety, and the effects Defendants' unlawful conduct would have on the Plaintiff.  Accordingly, punitive damages are not only

appropriate in this case, but should be awarded to Plaintiff Patrick Missud as a result of the

egregious and fraudulent conduct alleged herein.  As a result, Patrick Missud seeks punitive and

exemplary damages as provided by California Civil Code Section 3294, in an amount sufficient to

punish Defendants and to deter such conduct in the future.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## V11. SEVENTH CAUSE OF ACTION: PERSONAL INJURY, NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.

81. Plaintiffs hereby incorporate by reference Paragraphs 1 through 80 above as though fully set forth herein.

82. Defendants' act of sending Plaintiff Patrick Missud a fraudulent certified restricted delivery return receipt letter through the Federal mail, and informing him that he had forfeited his cash deposits and lost his home for a total loss of at least $70,000.00 amounts to extreme and outrageous conduct.

83. Defendants' recklessly published the statements within the certified letter that the Plaintiffs had failed to fulfill lender requirements within the terms of the Contract without adequate review, wantonly causing the Plaintiffs severe emotional distress.

84. Defendants' knew that the statements within the certified letter that the Plaintiffs had failed to fulfill lender requirements within the terms of the Contract were reckless, and inadequately reviewed.

85. Defendants' extreme and outrageous conduct of making reckless statements which ultimately would have resulted in large impending financial losses, and sending them to Plaintiff Patrick Missud in a certified letter caused him severe emotional distress, aggravating his normally benign congenital condition which required immediate medical intervention within three hours receipt of the letter.

86. Plaintiff Patrick Missud suffered excruciating pain for 5 days because of the kidney stone which had lodged in his abdomen which normally would have passed without complication in the absence of the distress generated by the recklessly published statements of the certified letter.

87. As a direct and proximate cause of the Defendants' extreme and outrageous conduct of

1  publishing reckless statements which ultimately would have resulted in over $70,000.00 in losses

2  and noticing him in a Federally certified letter, both of which resulting in his near immediate

3  hospitalization, Plaintiff Patrick Missud is entitled to damages and equitable relief as prayed for

4  below.

5  88. Defendants engaged in the reckless and wanton extreme and outrageous conduct alleged

6  herein with malice, fraud and oppression.  Defendants also acted with a wanton, and reckless

7  disregard for Plaintiff Patrick Missud's health and safety, and the effects Defendants' reckless

8  conduct would have on the Plaintiff.  Accordingly, punitive damages are not only appropriate in

9  this case, but should be awarded to Plaintiff Patrick Missud as a result of the egregious and

10  wanton conduct alleged herein.  As a result, Patrick Missud seeks punitive and exemplary

11  damages as provided by California Civil Code Section 3294, in an amount sufficient to punish

12  Defendants and to deter such conduct in the future.

13  WHEREFORE, Plaintiffs pray for relief as set forth below.

14  **V1II. EIGHTH CAUSE OF ACTION: VIOLATION OF USC TITLE 18, SECTION 1513**

15  89. Plaintiffs hereby incorporate by reference Paragraphs 1 through 88 above as though fully set

16  forth herein.

17  90. U.S.C. Title 18, Section 1513 entitled, "Retaliating against a witness, victim or an informant"

18  sub parts (e) and (f) state that:

19      (e) "Whoever knowingly, with the intent to retaliate, takes any action harmful to any
    person, including interference with the lawful employment or livelihood of any person, for

20      providing to a law enforcement officer any truthful information relating to the commission
    or possible commission of any Federal offense, shall be fined under this title or imprisoned

21      not more than ten years or both."
    (f) "Whoever conspires to commit any offense under this section shall be subject to the

22      same penalties as those prescribed for the offense the commission of which was the object
    of the conspiracy."

23

24  91. Defendants and Defendants' varied counsels have three times intentionally interfered with

25  Plaintiff Patrick Missud's lawful employment in two states after he had provided truthful

26  information regarding the commission of Federal offenses to no less than 30 law enforcement

27  officers inclusive of 27 State Attorneys General, the FTC, FBI, DOJ and even at the express

28  writen request by HUD's RESPA division director, Ivy Jackson.

92. Defendants' actions have resulted in a world wide web publication by the Nevada Engineers' Board that Plaintiff Patrick Missud was allegedly practicing engineering without a license. The Board's stipulated agreement with Patrick Missud, requires that he only clarify his advertisement for Nevada consumers to minimize confusion brought on by his chosen and officially registered name style, 'Home Engineering.'

93. As a direct and proximate cause of the intentional interference alleged herein, Plaintiff Patrick Missud has been harmed and has suffered, among other things, damages, humiliation, and emotional distress.

94. As a direct and proximate cause of the intentional interference with his lawful employment alleged herein, Plaintiff Patrick Missud is entitled to damages and equitable relief as specified by the U.S.C. and prayed for below.

95. Defendants engaged in the intentional interference alleged herein with malice, fraud and oppression. Defendants also acted with a wanton, willful and reckless disregard for the rights of the Plaintiff, and the effects Defendants' unlawful conduct would have on the Plaintiff. Accordingly, punitive damages are not only appropriate in this case, but should be awarded to Plaintiffs as a result of the egregious and illegal conduct alleged herein. As a result, Plaintiffs seek punitive and exemplary damages as appropriate under the U.S.C., in an amount sufficient to punish Defendants and to deter such conduct in the future.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## IX. NINTH CAUSE OF ACTION: DECLARATORY RELIEF

96. Plaintiffs hereby incorporate by reference Paragraphs 1 through 95 above as though fully set forth herein.

97. As a result of the fraudulent conduct and fraudulent inducement alleged herein, the Contract clauses of adhesion that Plaintiffs entered into with Defendants regarding provisions purportedly waiving the right to collect punitive damages and the Constitutional right to a jury trial, or any provisions calling for a judicial reference, mediation or arbitration of any disputes related to or arising from the Contract are void as a matter of law and public policy, are unenforceable and Plaintiffs are not bound by any provisions of the Contract which are adhesive. As such, the

1  Plaintiffs are entitled to pursue all of their rights and remedies as allowed by the laws of the State

2  of California, where the fraud occurred and it effects were felt, and in the Ninth District Federal

3  Court.

4  98. As a result of Defendants' fraudulent and illegal conduct, including the unconscionable

5  contract provisions as alleged herein, Plaintiffs request a declaration by this Court that the

6  aforementioned contract provisions are unconscionable, in whole or in part, pursuant to Section

7  1670.5 of the Civil Code and/or California common law, and are therefore null and void and

8  unenforceable as a matter of California law and public policy.

9  WHEREFORE, Plaintiffs pray for relief as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and in the public interest, respectfully demand a judgment against Defendants, and each of them as follows:

1. For general, compensatory, incidental and consequential damages in an amount to be determined according to proof at the time of trial;

2. For injunctive relief consisting of a temporary restraining order, preliminary injunction, and/or permanent injunction preventing Defendants from continuing their illegal business practices;

3. For exemplary and punitive damages;

4. For costs of suit incurred herein;

5. For interest at the highest legal rate commencing from the earliest date allowed by law;

6. For a declaration that the Contract adhesion clauses are invalid, void and unenforceable based upon fraudulent inducement and upon procedural and substantive unconscionability, and that the Plaintiffs are therefore free to litigate the claims in this action free from the unconscionable provisions noted above;

7. For such other and further damages under the U.S.C., or other federal or state code as this Court may deem appropriate.

8. DEMAND FOR JURY TRIAL

_____          _____

Patrice Missud                                          Dated