# EXHIBIT JN7

1   **PATRICE A. MISSUD** (SBN 219614)
    91 San Juan Ave.
2   San Francisco, CA, 94112
    415-584-7251 ph/fax
3

4   ATTORNEY AND PLAINTIFF

5

6

7

8

9

10

11  PATRICE A. MISSUD,
    JULIE D. MISSUD

12  Plaintiffs

13

14

15

16  vs.

17

18

19

20  D. R. HORTON, INC.;
    DHI MORTGAGE COMPANY, LTD, LP.;
21  DONALD HORTON; DONALD TOMNITZ;
    MICHAEL MASON; DANIEL CALLIHAN;
22  ANNIE SCHANKIN; JAMES FRASURE;
    DOES 1-200
23

24  Defendants

ENDORSED
FILED
San Francisco County Superior Court

OCT 2 3 2006

GORDON PARK-LI, Clerk
BY: _DEBORAH STEPPE_
                        Deputy Clerk

CASE MANAGEMENT CONFERENCE SET

FEB 2 3 2007 - 10:30 AM

DEPARTMENT 212

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF SAN FRANCISCO
UNLIMITED CIVIL JURISDICTION

Case No.   **C G C - 0 6 - 4 5 7 2 0 7**

**COMPLAINT FOR**: FRAUDULENT INDUCEMENT, FRAUDULENT CONCEALMENT, INTENTIONAL MISREPRESENTATION, BREACH OF FIDUCIARY DUTY, DECLARATORY RELIEF AND RESTITUTION.

**UNLIMITED**

25  PLAINTIFFS, PATRICE A. MISSUD AND JULIE D. MISSUD, ALLEGE an action based on

26  FRAUD, FRAUDULENT INDUCEMENT, INTENTIONAL MISREPRESENTATION,

27  BREACH OF FIDUCIARY DUTY, DECLARATORY RELIEF AND RESTITUTION and

28  caused by the defendants.

COMPLAINT FOR FRAUD, FRAUDULENT INDUCEMENT, INTENTIONAL MISREPRESENTATION......                    1

1  A. The Superior Courts of California are courts of general jurisdiction and these causes of action

2  have been filed within the three year statute of limitations.

3  B. California is the proper jurisdiction for these actions as it is where the fraudulent conduct,

4  contract, all addendums, and closing and title transfer documents were entered into and/or

5  executed, causes of action accrued, effects of the fraud were experienced, and majority of

6  witnesses reside and records exist.

7  C. Personal jurisdiction over D. R. Horton Inc. is appropriate as it does business in California.

8  The California Courts have already determined that California, "by adoption of [Business and

9  professions Code] sections 7000-7145 has pre empted the field of regulating contractors."

10  [Agnew v. Los Angeles (1958), 51 C2d 1, 330 P2d 385].  The California Contractors' State

11  License Board [CSLB], exercises plenary authority in licensing contractors.  On October 11,

12  2006, the Chief Code Enforcement Officer at the Sacramento CSLB headquarters

13  administratively determined that the "six active California contractor licenses that are doing

14  business as D R Horton are as follows:

15          General Building B #'s 634710, 750190, 765023, 770126, 814647, 873087;

16          General Engineering A # 750190.

17  D. All of the individual defendants at the time of the fraudulent transactions were corporate

18  directors, officers, or agents of D. R. Horton Inc. and/or DHI Mortgage Company, Ltd.

19  E. The Superior Court of San Francisco is the proper venue as it is where the contracts were

20  executed, causes of action accrued, effects of the fraud experienced, and witnesses and records

21  exist.

22  F. There are no federal causes of action represented in this State of California filing.  This action

23  alleges common law, statutory, and equitable claims under California law.  This state filing is not

24  a class action.  A separate federal class action based in federal law is being prepared and will be

25  filed on behalf of other similarly aggrieved individuals.

26  G. Based on investigations beginning since late May of 2006 which have yielded upwards of 60

27  other consumers from at least five different states who have also been similarly defrauded from

28  at least early 2004 until early 2006,  and discovery of certain Defendants, the Plaintiffs allege

1   upon belief and information, the information having already been forwarded to over 50 state and

2   federal governmental agencies including the DOJ, HUD, Board of Governors, FTC, FBI and the

3   SEC, all of the following:

<h2 style="text-align:center">I. <u>NATURE OF THE ACTION</u></h2>

5   1. This complaint concerns a massive fraud perpetuated on the Plaintiffs in particular and other

6   unsuspecting members of the national public.  Defendants sold the Plaintiffs and others, homes

7   which were illegally conditioned on the purchase of Defendants' financial services through

8   affiliate CH Mortgage, now DHI Mortgage Company, Ltd. [DHI].  The Defendants

9   misrepresented in their Contract that the Plaintiffs were not required to use the Defendant's

10   wholly owned subsidiaries and affiliates in conjunction with the purchase of their property

11   located at 1353 Romanesca Drive, Henderson, Nevada, 89052 [Property].  Defendants and

12   Defendants' employees perpetuated this fraudulent scheme on the Plaintiffs so that the

13   Defendants could add to their roughly $250 million yearly revenue through their mortgage

14   lending operations which in part generate said revenue by selling the servicing rights to third

15   parties, such as Countrywide Mortgages, and at the expense of the Plaintiffs.

16   2. Plaintiffs are individuals who purchased their primary residential home in the Anthem Heights

17   subdivision of Henderson, Nevada, approximately 20 miles from their sister and family who

18   reside in neighboring Las Vegas.  Earnest money totaling $7598.00, was received by D. R.

19   Horton on November 22, 2003, and the contract for the Property was entered into on November

20   24, 2003 [Contract].  The Contract and each and every phone call, fax, page, application,

21   document, addendum and change order was received, executed and funded from the Plaintiffs'

22   then primary residence from November 2003 to March 2004 and located in the County of San

23   Francisco.  The final closing documents transferring title for the Nevada Property were executed

24   within the City and County of San Francisco under notary seal.

25   3. The Defendants fraudulently concealed, failed to disclose and misrepresented that the purchase

26   of the Property was conditioned on the sale of Defendants' financial services.  Plaintiffs, in

27   California, were fraudulently induced by the Defendants in Nevada into the Contract which

28   verbatim and in form provided that, "Buyer(s) is NOT required to use CH Mortgage I, Ltd as a

1  condition of the purchase of the Property from D. R. Horton, Inc. or as a condition of the

2  application for, settlement of, a mortgage loan on the Property in connection with this purchase.

3  THERE ARE OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR

4  SERVICES."

5  4. Defendants willfully and intentionally forwarded false information to the Plaintiffs' outside

6  mortgage lender, Wells Fargo [Lender] on at least three occasions in an effort to fraudulently

7  cancel the Contract.  The Defendants with scienter forwarded the false information to Plaintiffs'

8  Lender untimely and in an effort to fraudulently cancel the Contract.  The Contract provided that

9  the "Seller requires that Buyer(s) shall cause loan documents to be available from the Lender

10  within twenty four hours of written request from Seller.  Seller further requires that funding of

11  the loan occur within twenty four hours receipt by the Lender of executed loan documents.  It is

12  Buyer's responsibility to ensure the performance of an outside Lender specific to these

13  requirements."  The Contract further stipulated that "Upon any default on the part of Buyer(s) of

14  any terms or conditions of the Contract including without limitation, Buyer(s)'s failure to timely

15  execute papers or ....timely close escrow that the Seller may, at its sole option, forfeit and

16  terminate the Contract, in which event Seller shall declare the Contract forfeited , and all rights

17  of Buyer(s) hereunder shall thereupon cease and terminate and all sums of money paid hereunder,

18  including but not limited to Option Deposits and Earnest Money, shall be forfeited to and

19  retained by Seller as liquidated damages."  Plaintiffs' Lender was on three occasions unable to

20  calculate the total sales price of the home because of the false information forwarded late by the

21  Defendants.  The false information and delays resulted in a nine day late escrow for which the

22  penalty was forfeiture of nearly $10,000 in cash as well as the home which had appreciated

23  approximately $60,000 from the time of Contract signing.

24  **II. THE PARTIES**

25  **Plaintiffs**

26  5. Plaintiffs Patrice A. Missud and Julie D. Missud are residents of San Francisco, California.

27  They purchased, as husband and wife, the Property in Henderson, Nevada in March of 2004.

28  This Property was located at Lot 8 of the Anthem Heights sub division, in the Del Webb

COMPLAINT FOR FRAUD, FRAUDULENT INDUCEMENT, INTENTIONAL MISREPRESENTATION......          4

1  Community, also known as 1353 Romanesca Drive, Henderson, Nevada, 89052.  The purchase

2  price was $402,120.00 without upgrades.

3  6. Plaintiff Julie Missud was and is a licensed and practicing patent attorney in the state of

4  California and the federal courts.  Plaintiff Patrick Missud was at the time of the fraud from late

5  November 2003 through March 2004 a self employed, licensed, general building contractor dba

6  Home Engineering and Missud Contracting, performing $65,000 of contracts within and around

7  the County of San Francisco.  Plaintiff Patrick Missud from February 7-12, 2004, was also

8  attending a patent bar preparation course to become a licensed and practicing patent attorney in

9  the state of California and the federal courts.  At the time of the fraud, and for four weeks, the

10  Plaintiffs were damaged as a result of the interference and effects that the fraud had on Mr.

11  Missud's executory general building contracts, Mr. Missud's preparation for the patent bar and

12  extraordinary efforts and personal travel to Nevada required to prevent the illegal forfeiture of

13  money deposits and Property from illegal Contract cancellation.

14  **Corporate Defendants**

15  7. Defendant D. R. Horton Inc. [D.R. Horton, or Company] is incorporated in Delaware, with its

16  headquarters located in Fort Worth, Texas.  D.R. Horton is a homebuilder which constructs and

17  sells single family homes.  D. R. Horton is a California General Building Contractor and doing

18  business under General Building license numbers B- 634710, 750190, 765023, 770126, 814647,

19  873087.  D. R. Horton is a California General Engineering Contractor and doing business under

20  General Engineering license number A- 750190.  In its capacities as a California State

21  Contractors' Board Qualified General Building and Engineering Contractor, D. R. Horton is

22  minimally building in 32 Municipalities throughout California, including Oakland and Palo Alto.

23  8. Defendant DHI Mortgage Company, Ltd. is a Texas limited partnership, and a wholly owned

24  subsidiary of D. R. Horton Inc.  Its general partner is DHI Mortgage GP, Inc., which is qualified

25  to do business in California.  DHI Mortgage Company Ltd. dba DHI Mortgage Company, Ltd,

26  LP conducts business in California.

27  9. On or about February 19, 2004, D. R. Horton Inc. received Plaintiffs' certified, return receipt

28  letters detailing the extensive fraud regarding the transaction for the Property.  The USPS has

COMPLAINT FOR FRAUD, FRAUDULENT INDUCEMENT, INTENTIONAL  MISREPRESENTATION......          5

1   verified D. R. Horton Inc.'s receipt of certified mailings numbered 700331100001-5943-6708,

2   6715, -5944-6400, 6448, 6479, 6516, 3621, 3638, 3652.....On October 1, 2004, the paralegal to

3   David T. Morice [Morice], who is the Vice President and Corporate Legal Counsel to D. R.

4   Horton Inc., acknowledged receipt of Plaintiffs' certified notifications of the fraud in a response

5   letter to the Southern Nevada Better Business Bureau.  On March 29, 2005, Morice, the

6   Corporate Legal Counsel and individual with the utmost responsibility in preventing fraud and

7   ensuring conformance with business ethics and the law, directly received a certified, return

8   receipt letter dated March 23, 2005, which extensively detailed the fraud regarding Plaintiffs'

9   transaction, and demanded that all agents involved in the fraud be terminated as per Company

10  policy.  The United States Postal Service  has verified Morice's receipt of certified mailing

11  number 7004116000071050-6352.  On May 11, 2005, D.R. Horton Inc.'s Las Vegas Corporate

12  Legal Counsel again acknowledged receipt of the March 23, 2005 letter and requested further

13  instructions as to how to proceed.  According to the *Corporate Code of Business Conduct and*

14  *Ethics* at D. R. Horton Inc., under *Obligations to Report Non-Compliance*, "If you have any

15  reason to believe that someone has violated the guidelines set forth in this Code of Business

16  Conduct and Ethics, or has otherwise acted unethically or unlawfully, you must report such

17  concerns to management."  Under *Violations of this Code*, "In instances in which the Board or

18  the Company has reasonable grounds to believe an employee has violated the terms of this Code,

19  the Board or the Company will investigate the alleged violation and may suspend the

20  employee....Further, in situations in which the Company identifies Code violations that constitute

21  violations of applicable law, the Board or the Company may be required to report such violations

22  to the appropriate authorities."  According to the *Corporate Governance Principles* at D. R.

23  Horton Inc., under *Compliance with Law and Company Policy*, it is the responsibility and duty of

24  the Board of Directors [Board] to ensure that "processes are in place for maintaining the integrity

25  and reputation of the Company, compliance with law and Company policy...and the integrity of

26  relationships with customers," and under *Concern Reporting*, "Any person who has a legitimate

27  concern about the Company's conduct may contact Corporate Counsel...and all outstanding

28  concerns will be reported to the directors as appropriate."  Rather than investigating the fraud and

COMPLAINT FOR FRAUD, FRAUDULENT INDUCEMENT, INTENTIONAL  MISREPRESENTATION......          6

1  agents involved, D. R. Horton has promoted Defendants Mason and Callihan.  Several additional

2  consumers were found during the May investigations, who were also defrauded naming these

3  same defendants in their declarations, and subsequent to March 2005.

4  **Individual Defendants**

5  10. Defendant Donald Horton is the Chairman of the Board of Directors of D. R. Horton Inc.  As

6  of March 2005, defendant Donald Horton received notice from the Vice President and Corporate

7  Legal Counsel Morice as per the *Corporate Code of Business Conduct and Ethics* as well as

8  *Corporate Governance Principles* that there was extensive fraud regarding Plaintiffs' transaction

9  and with the possibility that other consumers were being similarly defrauded.  Defendant Donald

10  Horton did nothing to ensure compliance with the law and Company policy because Plaintiffs'

11  investigations regarding defendant D. R. Horton has, at the time of this filing, minimally found a

12  dozen additional consumers who had been defrauded much in the same way as Plaintiffs had,

13  within a single year from March 2005, until early 2006, and after detailed notification of the

14  fraud.  It is Plaintiffs' contention that Defendant Donald Horton had knowledge of the fraud prior

15  to the Plaintiffs' Contract signing for the Property in late November 2003, and had intentionally

16  sanctioned the alleged conduct herein.

17  11. Defendant Donald Tomnitz [Tomnitz], is the Vice Chairman of the Board of Directors,

18  President, and CEO of D. R. Horton Inc.  As of March 2005, defendant Donald Tomnitz received

19  notice from the Vice President and Corporate Legal Counsel David Morice as per the *Corporate*

20  *Code of Business Conduct and Ethics* as well as *Corporate Governance Principles* that there was

21  extensive fraud regarding Plaintiffs' transaction and with the possibility that other consumers

22  were being similarly defrauded.  Defendant Donald Tomnitz did nothing to ensure compliance

23  with the law and Company policy because Plaintiffs' investigations, at the time of this filing,

24  have minimally found a dozen additional consumers who had been defrauded much in the same

25  way as Plaintiffs had, within the single year from March 2005 until early 2006, and after detailed

26  notification of the fraud.  It is Plaintiffs' contention that Defendant Tomnitz had knowledge of

27  the fraud alleged herein prior to the Plaintiffs' Contract signing for the Property in late November

28  2003, and had intentionally sanctioned the alleged conduct herein.

12. Defendant Michael Mason [Mason] was at the time of the fraud the agent and employee of DHI Mortgage Company, Ltd. [DHI], and the Plaintiffs' loan officer in charge of processing the inside lender loan for defendants DHI and D. R. Horton. As a licensed state of Nevada mortgage broker, Mason had the duty to not deal with any party to a real estate transaction in a manner which is deceitful, fraudulent or dishonest, and as per NRS 645B170 partially entitled *Fiduciary Duty of a Mortgage Broker*, "The mortgage broker has a fiduciary duty to each debtor with respect to the money in an impound trust account." It is Plaintiffs' contention that Mason breached his duties under Nevada law and took part in the interstate fraud along with the other Defendants, thereby violating California laws as well.

13. Defendant Daniel Callihan [Callihan] was at the time of the fraud the agent and employee of DHI Mortgage Company, Ltd. [DHI], and supervisor to the Plaintiffs' loan officer and Defendant Mason, in charge of processing the inside lender loan for Defendants DHI and D. R. Horton. As a licensed state of Nevada mortgage broker, Callihan was bound by Nevada Revised Statutes Section 645B.460 entitled *Supervision by Mortgage Broker; Requirements; Regulations* which state in part:

> 1. A mortgage broker shall exercise reasonable supervision over the activities of his mortgage agents. Such reasonable supervision must include, as appropriate:
> a. The establishment of a system to review, oversee and inspect the activities of his mortgage agents; and
> b. The establishment of a system to review, oversee and inspect the activities of his mortgage agents, including without limitation:
> > 1. Transactions handled by his mortgage agents pursuant to this chapter;
> > 2. Communications between his mortgage agents and a party to such a transaction;
> > 3. Documents prepared by his mortgage agents that may have a material effect upon the rights or obligations of a party to such a transaction.

It is Plaintiffs' contention that Callihan breached his duties under Nevada law and took part in the interstate fraud along with the other Defendants, thereby violating California laws as well.

14. Defendant Anne Schankin [Schankin] was at the time of the fraud the agent and employee of D. R. Horton Inc. and the sales agent and manager in charge of the sale of Plaintiffs' Property. As a then licensed state of Nevada real estate broker, Schankin had the duty to "not deal with any party to a real estate transaction in a manner which is deceitful, fraudulent or dishonest." [NRS 645.3205]. On March 22, 2004, and just over one month after the fraud alleged herein, Schankin

1  was "disassociated" from D. R. Horton Inc. NRS 645.670 reads in part:

2      "In the event of the revocation or suspension of the license issued to a manager or to any
3      officer of a corporation, the corporation shall not conduct business unless the manager
    whose license has been revoked is severed and the offending officer is discharged and has
4      no further participation in its activities."

5  It is Plaintiffs' contention that Schankin breached her duties under Nevada law and took part in

6  the interstate fraud along with the other Defendants, thereby violating California laws as well.

7  15. Defendant James Frasure [Frasure] was at the time of the fraud the agent and employee of D.

8  R. Horton Inc. and the supervisor to Schankin, the sales agent and manager in charge of the sale

9  of Plaintiffs' Property. As a licensed State of Nevada real estate broker, and the President of D.

10  R. Horton's Las Vegas Division, Frasure was bound by NRS 645.660, *Knowledge of associate or*

11  *employer of violation by licensee or employee; penalties*, which in part reads:

12      "Any unlawful act or violation of any of the provisions of this chapter by any licensee is
    not cause to suspend, revoke or deny the renewal of the license of any person associated
13      with the licensee, unless it appears to the satisfaction of the Commission that the
    associate knew or should have known thereof. A course of dealing shown to have been
14      persistently and consistently followed by any licensee constitutes prima facie evidence of
    such knowledge upon the part of the associate."

15

16  Frasure has come before the Nevada Departments of Business and Industry's Real Estate

17  Division Disciplinary Board on two occasions for disciplinary actions S06-07-01-01 and -02-02

18  regarding brokering real estate without a license. It is Plaintiffs' contention that Frasure had

19  knowledge of the fraudulent conduct by his associate and Defendant Schankin, and breached his

20  duties under Nevada law, and took part in the interstate fraud along with the other Defendants,

21  thereby violating California laws as well.

22  **The Doe defendants**

23  16. The true names of the Defendants sued herein as Does 1 through 200 [Doe Defendants], are

24  either unknown to Plaintiffs, or their specific role in the unlawful and wrongful conduct, scheme

25  and enterprise alleged herein is presently unknown to Plaintiffs, and therefore Plaintiffs sue the

26  Doe Defendants by such fictitious names. Plaintiffs will seek leave to amend this complaint to

27  allege the true names and capacities of the Doe Defendants at such time as they have been

28  ascertained. Plaintiffs believe they will be able to identify Doe Defendants after appropriate

COMPLAINT FOR FRAUD, FRAUDULENT INDUCEMENT, INTENTIONAL MISREPRESENTATION......                    9

1  discovery has been completed.

2  17. The Doe Defendants may include, but are not limited to, the directors, officers, managers,

3  employees, agents, representatives, real estate agents, affiliates, and/or other persons or entities

4  who engaged in, assisted, aided and abetted, or conspired with any of the Defendants in the

5  commission of any part of the unlawful conduct, scheme, and/or enterprise alleged herein.

6  18. The Defendants shall be collectively referenced in this complaint as the "Defendants."

7  Unless stated otherwise, "Defendants" shall also mean and include the plural and singular, and

8  will include all of the Defendants collectively, and any of them individually.

9  **Allegations of Concerted Action**

10  19. At all relevant times, Defendants pursued a common course of conduct, acted in concert with

11  one another, and conspired with one another to accomplish the offenses complained of herein,

12  and performed acts and concealed and/or misrepresented material information, in furtherance

13  thereof.  In addition to the wrongful conduct alleged herein, which gives rise to Defendants'

14  primary liability, Defendants further aided and abetted, and knowingly assisted one another, in

15  perpetrating the illegal and wrongful conduct complained of herein.

16  20. Whenever this complaint alleges an act, deed or transaction by a corporation, partnership, or

17  other business entity, the allegation means that the corporation, partnership, or other business

18  entity engaged in the act, deed or transaction by or through its owners, partners, directors,

19  officers, managers, employees, agents, and/or representatives while acting within the course and

20  scope of their employment, partnership or agency; were actively engaged in the management,

21  direction, and/or control of the entity; and/or were transacting the entity's ordinary business or its

22  affairs.

23  **Jurisdiction and Venue**

24  21. This is an action for damages and other appropriate relief arising under California statutes

25  and the common law.  At this time, there are no claims alleged under federal law or the laws of

26  the United States.

27  22. The amount in controversy exceeds the jurisdictional minimum of this Court.

28  23. Defendants D. R. Horton Inc. and DHI Mortgage Company, Ltd. Are qualified to do business

COMPLAINT FOR FRAUD, FRAUDULENT INDUCEMENT, INTENTIONAL MISREPRESENTATION......                    10

1   in the state of California, and conduct substantial business in the state of California. The

2   unlawful acts and practices alleged herein occurred in and immediately around the County of San

3   Francisco, State of California.

4   **DEFENDANTS' UNLAWFUL CONDUCT**

5   **Background**

6   24. As a result of fraudulent inducement, the Plaintiffs purchased the Property in Henderson,

7   Nevada, from San Francisco, California. The Property was purchased pursuant to a form

8   adhesion written sales agreement between the Plaintiffs and D. R. Horton Inc. The agreement

9   was entitled "Offer and Acceptance and Receipt for Deposit (Contract)" [the "Contract"]. The

10  Contract included several disclosures which specifically stated and noticed the business

11  affiliation between D. R. Horton and DHI, that there may be a financial benefit for referral from

12  one to the other, and that the sale of the former's product was not conditioned on the sale of the

13  latter's products. Paragraphs 3, 5, 16, 18 and 19 further specified the Plaintiffs' duties regarding

14  the execution of loan documents and the penalties for not adhering to the conditions. In

15  paragraph 18, D. R. Horton Inc. reserved for itself the following clause: "Without limiting any

16  other right of the seller herein, at law or in equity, it is expressly understood and agreed that each

17  and every thing to be performed by Buyer(s) under the Contract shall be considered a condition.

18  Upon any default upon the part of the Buyer(s) of any terms or conditions of the Contract

19  (including without limitation, Buyer(s) failure to timely execute papers...or timely close

20  escrow)....Seller may, at its sole option, forfeit and terminate the Contract, in which event the

21  Seller shall declare the Contract forfeited, and all rights of Buyer(s) hereunder shall thereupon

22  cease and terminate and all sums of money paid hereunder, including but not limited to Option

23  Deposits and Earnest money, shall be forfeited to and retained by Seller as liquidated damages."

24  In paragraph 19, under Timely Performance, D. R. Horton Inc. reserved for itself the following

25  clause: "Buyer(s) hereby acknowledges and agrees that time is strictly of the essence with respect

26  to each and every term, condition, obligation and provision hereof applicable to Buyer(s) and that

27  failure to timely perform any of the conditions, obligations or provisions hereof shall constitute a

28  material breach of the Contract by Buyer(s) and a default under the Contract."

COMPLAINT FOR FRAUD, FRAUDULENT INDUCEMENT, INTENTIONAL MISREPRESENTATION......          11

**Defendants' Deceptive Misrepresentation about Plaintiffs' Choice of Lenders**

25. In the Contract at paragraph 5, the "Buyer(s) is NOT required to use DHI Mortgage Company, Ltd., as a condition of the purchase of the Property from D. R. Horton Inc. or as a condition of the application for, or settlement of, a mortgage loan on the Property in connection with this purchase."

**The Truth About the Plaintiffs' Choice in Lenders**

26. Plaintiffs had no choice in lenders. Defendants illegally and fraudulently required the use of their affiliated lender and conditioned the sale of Property on the obtaining of financial services through DHI Mortgage Company, Ltd. On November 24, 2003, Plaintiffs signed their home purchase Contract in California for the Property which required as a condition that plaintiff apply from California for a mortgage loan through the in house lender and defendant, DHI within five days of Contract signing. Horton and DHI had a business relationship in which DHI "may provide Horton with a financial benefit." The Defendants were to prepare Plaintiffs' $360,000 mortgage loan application and ensure that Plaintiffs accurately fulfilled their loan requirements for the benefit of both internal lenders and the Plaintiffs. Had the Plaintiffs agreed to use the Defendants' inside lender, then the Defendants would have earned one point on the loan funds, as well as origination, closing and miscellaneous fees. The Plaintiffs had over 30 interstate communications with the Defendants. The first 28 communications resulted in the Plaintiffs' loan being "approved" on January 5, 2004 and then subsequently only "preliminarily" approved on January 30, 2004. The last two communications were a 9 minute phone call from San Francisco to what is believed to be Defendant Callihan's direct extension in his office in Las Vegas at 702-407-2704 and a faxed copy of an outside lender loan acknowledgment sent to DHI also in Las Vegas, for a counteroffer on February 12, 2004 at 6:33 PM and 6:47PM respectively. On that same date, February 12, 2004, time unknown, Defendants mailed from Las Vegas to San Francisco a certified letter [Letter] claiming that Plaintiffs had "not completed lender requirements," and was devoid of any items requiring remedy, and further stated that Plaintiffs would forfeit thousands of dollars for failure to address those items. Including the loan fees, on February 12, 2004, Defendants minimally had over a $75,000 incentive to fraudulently claim that

1  Plaintiffs had breached the Contract for the Property.   On February 19, 2004, Mr. Missud signed

2  for the certified, return receipt  letter from Nevada and within 3 ½ hours was admitted to the Daly

3  City, California  Seton Medical Center emergency room experiencing severe aggravation of his

4  congenital medical condition and suffering abdominal pain and nausea for which he was

5  intravenously administered narcotics for approximately 4 hours.  This personal injury is the

6  subject of Mr. Missud's separate tort action which Mrs. Missud did not take part in, and was

7  filed in August of 2005 to prevent a time bar with the San Francisco Superior Court, case #05-

8  447499, and nine months before Plaintiffs learned of the extensive fraud conducted nationally.

9  At 1:30 PM, 27 minutes after being admitted to the emergency room, Mr. Missud contacted his

10  Nevada realtor Sharon Menary [Menary] and requested that she continue closing on the Property

11  with his limited participation. On February 20, 2004, Menary attempted to have Defendants sign

12  a simple "Fungal and Mold Contaminant Disclosure-Waiver" but the "Seller refuse[d] to sign."

13  From February 19, 2004 until early March, the Plaintiffs had forwarded numerous letters

14  describing the fraudulent activities to many state and federal agencies and other organizations

15  with hopes that they would intervene.  On February 24, 2004 Mr. Missud, still under the

16  influence of Vicodin and unable to complete his general building contracts or prepare for the

17  patent bar, was forced to fly from Oakland, California to McCarran airport in Las Vegas to

18  personally tender performance at the offices of United Title of Nevada to prevent Defendants'

19  anticipatory repudiation of the contract. Upon his return to California from Nevada that same

20  afternoon, Mr. Missud received yet another notice from his lender's loan processor at Wells

21  Fargo in San Diego that Defendants had again sent a fourth different "sales addendum" from

22  their offices in Las Vegas.  The Plaintiffs from their home and local post office, sent Defendants

23  another letter requesting cooperation and an accurate accounting of the final sales price for the

24  Property.  Internal Wells Fargo files pervasively indicate that all parties to the contract were

25  ready, willing, "urgent[ly]"trying and "rush[ing]" to close on or before the closing date of

26  February 22, 2004 -with the exception of the Defendants.  Among the penalties for a five day late

27  closing was Contract rescission.  On February 23, 2004 Defendants from Nevada sent Wells

28  Fargo in San Diego a finally correct "Final Sales Addendum" to supercede the last erroneous one

1  and is the "sales addendum" which prompted Plaintiffs' last letter requesting cooperation.  On

2  February 27, 2004, five full days after the official closing date, Defendants left a recorded voice

3  message with the plaintiff in San Francisco, that they were "expedit[ing] closing."  Once the

4  documents were mailed from Nevada to California, the Plaintiffs executed the pre printed escrow

5  documents on March 2, 2004 at Chicago Title in San Francisco under notary seal from E.S.

6  VillaNueva, notary public of California, San Francisco County.  VillaNueva corrected the

7  printing on the documents by hand to accurately reflect that they had in fact been executed in

8  California rather than in Nevada.  Mr. Missud then for a second time that same week, and still

9  under the effects of Vicodin, flew to Las Vegas to personally hand deliver the escrow documents

10  to Defendants' affiliated settlement provider, United Title of Nevada.  Escrow finally closed, but

11  these same documents had to once again be amended because they had been preprinted with the

12  anticipated February 22, 2004, closing date which had been nine days delayed as a result from all

13  of the misrepresented contract revisions slowly forwarded by the Defendants.  It was later learned

14  that on March 22, 2004, defendant Schankin, the sales manager in charge of the plaintiff's

15  Contract, was "disassociated" from D. R. Horton.  One and a half years later, on October 5,

16  2005, in answer to Plaintiffs' complaint filed with, and an investigation by the Nevada

17  Department of Mortgage Lending, the Defendants stated that "as of February 12, 2004, Mr.

18  Missud had not completed all lender requirements as requested by DHI Mortgage."  However, in

19  a document filed one week later, with the Superior Court of California on October 13, 2005, in

20  Mr. Missud's personal injury action against some of the same Defendants and regarding different

21  claims, the Defendants admitted that the Plaintiffs' loan through DHI had in fact been completed,

22  and that D. R. Horton "provides the in-house lending option as a 'convenience' to home buyers

23  but they can also use outside lenders if they prefer."

24  **I. FIRST CAUSE OF ACTION: FRAUD IN THE INDUCEMENT**

25  27. Plaintiffs hereby incorporate by reference Paragraphs 1 through 26 above as though fully set

26  forth herein.

27  28. Defendants failed to disclose, intentionally omitted and/or fraudulently concealed the alleged

28  adverse material information with full knowledge that it would have been important to Plaintiffs

1  in making their decision about whether or not to purchase the Property from Defendants.

2  29. Defendants also knew the alleged adverse material information was information a reasonable

3  person would have used in making a decision about whether or not to purchase the Property from

4  the Defendants at all.

5  30. The Plaintiffs were completely unaware of the adverse material information alleged herein

6  before they purchased the Property from the Defendants.

7  31. In reasonable reliance upon the uniform false and misleading statements and

8  misrepresentations alleged herein, and without being able to evaluate or consider the adverse

9  material information that Defendants failed to disclose and concealed from the Plaintiffs that they

10  would not be allowed to choose their own lender, the Plaintiffs were fraudulently induced into

11  purchasing their Property from the Defendants and subsequently, and to their detriment were

12  damaged and incurred substantial expenses in efforts to save their deposits and Property from

13  fraudulent and illegal forfeiture.

14  32. In reasonable reliance upon the uniform false and misleading statements and

15  misrepresentations alleged herein, and without being able to evaluate or consider the adverse

16  material information that Defendants failed to disclose, and concealed from the Plaintiffs that

17  they would not be allowed to choose their own lender, the Plaintiffs were fraudulently induced

18  into purchasing their Property from the Defendants and would, to their detriment, have had to

19  pay additional tens of thousands in unnecessary, inflated and/or illegal; mortgage fees, interest

20  rates, points, PMI, closing costs, title fees, and miscellaneous expenses.

21  33. Had the adverse material information alleged herein been disclosed to Plaintiffs, the Plaintiffs

22  would not have purchased the Property from the Defendants, or would have demanded from

23  Defendants assurances that their cash deposits and Property would not be fraudulently forfeited

24  and cancelled.

25  34. Each of the Defendants was aware of the overall fraudulent scheme described herein, and

26  knowingly and willfully provided substantial assistance to the other Defendants and the

27  fraudulent scheme as alleged herein.  Therefore, each of the Defendants is liable to Plaintiffs as

28  an aider and abetter of the fraudulent scheme.

COMPLAINT FOR FRAUD, FRAUDULENT INDUCEMENT, INTENTIONAL MISREPRESENTATION......

15

1  35. Each of the Defendants knowingly agreed to combine and conspire together for the purpose

2  of effectuating the fraudulent scheme alleged herein, and acted to further the completion of that

3  scheme as described herein. Therefore, each of the Defendants is liable to the Plaintiffs as a co-

4  conspirator in connection with the fraudulent scheme.

5  36. As a direct result of the fraudulent conduct alleged herein, Plaintiffs were fraudulently

6  induced to enter into the Contract for the Property with the Defendants.

7  37. As a direct and proximate cause of the unlawful conduct alleged herein, Plaintiffs have been

8  harmed and have suffered, among other things, damages, pain and suffering, humiliation, and

9  emotional distress.

10  38. As a direct and proximate cause of the fraudulent conduct alleged herein, Plaintiffs have

11  incurred significant expenses, financial loss and consequential damages in an amount to be

12  determined according to proof at the time of trial, and as requested in the Prayer.

13  39. As a result of the fraudulent inducement alleged herein, the agreements that Plaintiffs entered

14  into with Defendants regarding provisions purportedly waiving the right to collect punitive

15  damages and the Constitutional right to a jury trial, or any provisions calling for a judicial

16  reference, mediation or arbitration of any disputes related to or arising from the Contract are void

17  as a matter of law and public policy and are unenforceable. As such, the Plaintiffs are entitled to

18  pursue all of their rights and remedies as allowed by the laws of the State of California, in the

19  Courts of the State of California.

20  40. Defendants engaged in the fraudulent conduct alleged herein with malice, fraud and

21  oppression. Defendants also acted with a wanton, willful and reckless disregard for Defendants'

22  duties under the law, the rights of the Plaintiffs, and the effects Defendants' unlawful conduct

23  would have on the Plaintiffs. Accordingly, punitive damages are not only appropriate in this

24  case, but should be awarded to Plaintiffs as a result of the egregious and fraudulent conduct

25  alleged herein. As a result, Plaintiffs seek punitive and exemplary damages as provided by

26  California Civil Code Section 3294, in an amount sufficient to punish Defendants and to deter

27  such conduct in the future.

28  WHEREFORE, Plaintiffs pray for relief as set forth below.

COMPLAINT FOR FRAUD, FRAUDULENT INDUCEMENT, INTENTIONAL MISREPRESENTATION......                    16

## II. SECOND CAUSE OF ACTION: FRAUDULENT CONCEALMENT

41. Plaintiffs hereby incorporate by reference Paragraphs 1 through 40 above as though fully set forth herein.

42. As a result of the fraudulent conduct alleged herein, Defendants fraudulently concealed material adverse information from the Plaintiffs regarding the purchase of the Property from the Defendants.

43. Defendants made false and misleading statements with full knowledge that the statements were false or misleading when made as alleged herein that Plaintiffs would be allowed to choose their own lender and were "NOT required to use DHI Mortgage Company, Ltd. as a condition of the purchase of the Property from D. R. Horton Inc., or as a condition of the application for, or settlement of, a mortgage loan on the Property in connection with this purchase," as was stated on the purchase Contract entered into on November 24, 2003.

44. Defendants intentionally concealed the material adverse information alleged herein with the intent to defraud Plaintiffs.

45. Plaintiffs were unaware of the adverse material information alleged herein, and would not have acted as they did, had they known of the concealed material adverse information alleged herein.

46. As a direct and proximate cause of the fraudulent concealment alleged herein, Plaintiffs have been harmed and have suffered, among other things, damages, pain and suffering, humiliation, and emotional distress.

47. As a direct and proximate cause of the fraudulent concealment alleged herein, Plaintiffs are entitled to damages and equitable relief as prayed for below.

48. Defendants engaged in the fraudulent concealment alleged herein with malice, fraud and oppression. Defendants also acted with a wanton, willful and reckless disregard for Defendants' duties under the law, the rights of the Plaintiffs, and the effects Defendants' unlawful conduct would have on the Plaintiffs. Accordingly, punitive damages are not only appropriate in this case, but should be awarded to Plaintiffs as a result of the egregious and fraudulent conduct alleged herein. As a result, Plaintiffs seek punitive and exemplary damages as provided by

1    California Civil Code Section 3294, in an amount sufficient to punish Defendants and to deter

2    such conduct in the future.

3    WHEREFORE, Plaintiffs pray for relief as set forth below.

4    **III. THIRD CAUSE OF ACTION: INTENTIONAL MISREPRESENTATION**

5    49. Plaintiffs hereby incorporate by reference Paragraphs 1 through 48 above as though fully set

6    forth herein.

7    50. As a result of the fraudulent conduct alleged herein, Defendants intentionally misrepresented

8    material adverse information from the Plaintiffs regarding the purchase of the Property from the

9    Defendants.

10   51. Defendants made false and misleading statements and misrepresented with full knowledge

11   that the statements were false or misleading when made as alleged herein that Plaintiffs had

12   "fail[ed] to complete lender requirements within agreement to obtain full loan approval," in their

13   February 12, 2004 letter sent certified, return receipt.

14   52. Defendants made further false and misleading statements and misrepresented with full

15   knowledge that the statements were false or misleading when made as alleged herein that

16   Plaintiffs had "not completed all lender requirements as requested by DHI Mortgage," as was

17   stated in answer to Plaintiffs' complaint and submitted to the Nevada Department of Mortgage

18   Lending on or about August 1, 2005, in an attempted cover up to a governmental entity of the

19   original fraud conducted on or prior to February of 2004.

20   53. Defendants intentionally misrepresented the material adverse information alleged herein with

21   the intent to defraud Plaintiffs.

22   54. On or about November 22, 2003 and February 12, 2004, Plaintiffs were unaware of the falsity

23   of the adverse material information alleged herein, and would not have acted as they did, had

24   they known of the intentionally misrepresented adverse information alleged herein.

25   55. As a direct and proximate cause of the intentional misrepresentations alleged herein,

26   Plaintiffs have been harmed and have suffered, among other things, damages, pain and suffering,

27   humiliation, and emotional distress.

28   56. As a direct and proximate cause of the intentional misrepresentations alleged herein,

1  Plaintiffs are entitled to damages and equitable relief as prayed for below.

2  57. Defendants engaged in the intentional misrepresentations alleged herein with malice, fraud

3  and oppression. Defendants also acted with a wanton, willful and reckless disregard for

4  Defendants' duties under the law, the rights of the Plaintiffs, and the effects Defendants'

5  unlawful conduct would have on the Plaintiffs. Accordingly, punitive damages are not only

6  appropriate in this case, but should be awarded to Plaintiffs as a result of the egregious and

7  fraudulent conduct alleged herein. As a result, Plaintiffs seek punitive and exemplary damages

8  as provided by California Civil Code Section 3294, in an amount sufficient to punish Defendants

9  and to deter such conduct in the future.

10  WHEREFORE, Plaintiffs pray for relief as set forth below.

11  **IV. FOURTH CAUSE OF ACTION: BREACH OF FIDUCIARY DUTY**

12  58. Plaintiffs hereby incorporate by reference Paragraphs 1 through 57 above as though fully set

13  forth herein.

14  59. As per NRS 645B170 partially entitled *Fiduciary Duty of a Mortgage Broker*, "The mortgage

15  broker has a fiduciary duty to each debtor with respect to the money in an impound trust

16  account." It is Plaintiffs/debtors' contention that Defendants breached their duties under Nevada

17  law and took part in the interstate fraud thereby violating California laws as well.

18  60. As a result of the fraudulent conduct alleged herein, Defendants fraudulently accounted for

19  the impounded trust funds and breached their fiduciary duties in claiming that Plaintiff/debtors

20  had failed to complete lender requirements, and concealed and/or misrepresented material

21  information from the Plaintiff/debtors and/or their Lender regarding the purchase of the Property

22  from the Defendants.

23  61. Defendants breached their fiduciary duties to the Plaintiff/debtors and made false and

24  misleading statements with full knowledge that the statements were false or misleading when

25  made as alleged herein that Plaintiffs loan through Defendants was incomplete as of February 12,

26  2004.

27  62. Defendants intentionally concealed and/or misrepresented the material information and

28  breached their fiduciary duties to the Plaintiff/debtors as alleged herein with the intent to defraud

COMPLAINT FOR FRAUD, FRAUDULENT INDUCEMENT, INTENTIONAL MISREPRESENTATION......          19

1    Plaintiffs.

2    63. Plaintiff/debtors were unaware of the intentionally concealed and/or misrepresented material

3    information alleged herein, and that the Defendants had breached their fiduciary duties.

4    64. As a direct and proximate cause of Defendants' breach of their fiduciary duties to the

5    Plaintiff/debtors, and intentional fraudulent concealment and/or misrepresentation alleged herein,

6    Plaintiffs have been harmed and have suffered, among other things, damages, pain and suffering,

7    humiliation, and emotional distress.

8    65. As a direct and proximate cause of the Defendants' breach of their fiduciary duties to the

9    Plaintiff/debtors, and fraudulent intentional concealment and/or misrepresentation alleged herein,

10   Plaintiff/debtors are entitled to damages and equitable relief as prayed for below.

11   66. Defendants breached their fiduciary duties to the Plaintiff/debtors and engaged in the

12   fraudulent intentional concealment and/or misrepresentations alleged herein with malice, fraud

13   and oppression.  Defendants also acted with a wanton, willful and reckless disregard for

14   Defendants' duties under the law, the rights of the Plaintiff/debtors, and the effects Defendants'

15   unlawful conduct would have on the Plaintiff/debtors.  Accordingly, punitive damages are not

16   only appropriate in this case, but should be awarded to Plaintiffs as a result of the egregious and

17   fraudulent conduct alleged herein.  As a result, Plaintiff/debtors seek punitive and exemplary

18   damages as provided by California Civil Code Section 3294, in an amount sufficient to punish

19   Defendants and to deter such conduct in the future.

20   WHEREFORE, Plaintiffs pray for relief as set forth below.

21   **IV. FIFTH CAUSE OF ACTION: DECLARATORY RELIEF**

22   67. Plaintiffs hereby incorporate by reference Paragraphs 1 through 66 above as though fully set

23   forth herein.

24   68. As a result of the fraudulent conduct and fraudulent inducement alleged herein, the Contract

25   clauses of adhesion that Plaintiffs entered into with Defendants regarding provisions purportedly

26   waiving the right to collect punitive damages and the Constitutional right to a jury trial, or any

27   provisions calling for a judicial reference, mediation or arbitration of any disputes related to or

28   arising from the Contract are void as a matter of law and public policy, are unenforceable and

1  Plaintiffs are not bound by any provisions of the Contract which are adhesive.  As such, the

2  Plaintiffs are entitled to pursue all of their rights and remedies as allowed by the laws of the State

3  of California, where the fraud occurred and it effects were felt, in the Courts of the State of

4  California.

5  69. As a result of Defendants' fraudulent and illegal conduct, including the unconscionable

6  contract provisions as alleged herein, Plaintiffs request a declaration by this Court that the

7  aforementioned contract provisions are unconscionable, in whole or in part, pursuant to Section

8  1670.5 of the Civil Code and/or California common law, and are therefore null and void and

9  unenforceable as a matter of California law and public policy.

10  **PRAYER FOR RELIEF**

11  WHEREFORE, plaintiffs, on behalf of themselves and in the public interest, respectfully demand

12  a judgment against defendants, and each of them as follows:

13  1. For general, compensatory, incidental and consequential damages in an amount to be

14  determined according to proof at the time of trial;

15  2. For injunctive relief consisting of a temporary restraining order, preliminary injunction, and/or

16  permanent injunction preventing Defendants from continuing their illegal business practices;

17  3. For exemplary and punitive damages;

18  4. For costs of suit incurred herein;

19  5. For interest at the highest legal rate commencing from the earliest date allowed by law;

20  6. For a declaration that the Contract adhesion clauses are invalid, void and unenforceable based

21  upon fraudulent inducement and upon procedural and substantive unconscionability, and that the

22  Plaintiffs are therefore free to litigate the claims in this action free from the unconscionable

23  provisions noted above;

24  7. For such other and further damages as the Court may deem appropriate.

25

26  _____                    10-23-06

27  Patrice Missud                                        Dated

28

COMPLAINT FOR FRAUD, FRAUDULENT INDUCEMENT, INTENTIONAL MISREPRESENTATION......                    21