# EXHIBIT A

## D. R. HORTON, INC.
### OFFER AND ACCEPTANCE AND RECEIPT FOR DEPOSIT
### ("CONTRACT")

13

RECEIVED FROM Patrice A. Missud, Julie E Missud ("Buyer(s)"), of:
91 San Juan Ave., San Francisco, CA 94112, (H Ph.) (415) 584-7251, (W Ph.) (415) 845-5540, (Email) missudpat@yahoo.com.

The Detail of Earnest Money payable now and as scheduled (See detail below) to: Escrow Agent (Identified in para 2), and as part of the Purchase Price of the following described Property ("Property").

Earnest money detail:
$7598 paid on 11/22/2003 Check 71858;

Lot/Unit 8 Block/Building ? of the Anthem Heights Subdivision according to the map or plat thereof recorded in the office of the County Recorder of Clark County, Nevada, also known as:
1353 Romanesca Drive, Henderson, NV 89052.

Improvements to be constructed in accordance with Plan/Model ID 2300MP PLAN Elevation C ("Plan") as shown by plans, specifications and other pertinent data on file with the appropriate governmental agency, the Veterans Administration ("VA"), or the Federal Housing Administration ("FHA").

Buyer(s) is purchasing a:

Detached Single Family Unit

1. Buyer(s) and Seller hereby agree as follows:

   Purchase Price for the Property shall be:                                                    $402,120.00      (1)
   Down Payment* due on or before Close of Escrow in the form of certified funds:               $40,212.00       (1a)
   Loan Amount*:                                                                                $361,908.00      (1b)

   *Buyer(s) is hereby made aware that the actual amount of funds required for the Down Payment and/or the Loan Amount may be greater than the amount stated above, by the addition of closing costs, impounds and/or mortgage insurance required by the Lender. This could include a "VA funding fee" if Buyer(s) obtains VA financing, the FHA Mortgage Insurance Premium ("MIP") if Buyer(s) obtains an FHA loan, or private mortgage insurance ("PMI") if Buyer(s) obtains a conventional loan.

2. ESCROW AGENT. Buyer(s) and Seller appoint United - Howard Hughes Pkwy Title Company, whose address is 3980 Howard Hughes Parkway Las Vegas, NV 89109 and phone number is (702) 836-8030 to serve as Escrow Agent for this transaction.

3. FINANCING INFORMATION/ EXPENSES. Buyer(s) intends to finance the purchase as follows:

   a. CASH CONTRACT - NOT APPLICABLE : Buyer(s) will pay cash to complete the purchase of the Property, and agrees to provide Seller, within five (5) days of the date of Buyer(s)'s Offer (see section 22), satisfactory evidence that Buyer(s) has sufficient cash available to complete this purchase. The Contract is not conditioned upon Buyer(s) obtaining a mortgage loan.
   To qualify for the Seller's "Cash Discount", Buyer must tender an earnest money deposit equal to 10% of the Base Price at time of initial contract, and pay cash for all W.O.W. and flooring selections at time of selection. The "Cash Discount" incentive is only available at time of initial contract, and will not be available subsequent to that date.

   b. CONV Mortgage payable in 360 Monthly installments, obtained from the following lender ("Lender"):

   Mortgage Company ("Lender"): CH Mortgage Company
   Address:       8215 S. Eastern Avenue, Suite 103, Las Vegas, NV 89123
   Office Phone: (702) 407-2700   Fax: (702) 407-2370
   Contact Name: Michael Mason
   Email:         mmason@ch-mortgage.com

   c. The amount of the Down Payment is equal to 10% (percent) of the final Purchase Price of the Property. Buyer(s) hereby warrants that Buyer(s) possesses the necessary funds required for the Down Payment, as well as applicable closing costs and impounds. Buyer(s) understands and agrees that the total amount required at Close of Escrow, including the Down Payment, may or will be affected by the addition and/or deletion of options and upgrades. Buyer(s) understands and agrees that a loan declination, due to insufficient funds to close, does not establish grounds for a Permitted Cancellation (see section 18c) and does not warrant a refund of the Earnest Money.

   d. If any deposit from Buyer(s) to Seller is returned due to non-sufficient funds, Buyer(s), upon request from Seller, shall replace the amount of the non-sufficient funds plus a fifty dollar ($50.00) non-sufficient funds fee in the form of certified funds. All subsequent deposits by the Buyer must be in the form of certified funds.

   e. EXPENSES TO BE PAID AT OR PRIOR TO CLOSING:

      (1) Seller's expenses:
         (a) Seller's normal closing costs, including ½ of Real Property Transfer Tax
         (b) Owner's Title Policy.
         (c) Incentives as stipulated in paragraph #4.

      (2) Buyer(s)'s expenses:
         (a) Buyer(s)'s normal closing costs and impounds (which may include, but are not limited to the loan origination fee, prepaid interest, mortgage insurance, escrow fee, association dues and capitalization fees, tax service, prorated taxes, hazard insurance, and flood insurance, if applicable). Including, ½ of Real Property Transfer Tax.
         (b) Credit report and appraisal fees (payable at the time of loan application).
         (c) The Lender's Title Policy.

   f. Buyer(s) represents that Buyer(s) is purchasing the Property as Buyer(s)'s primary residence.

   g. Buyer(s) represents that this purchase is is not subject to a 1031 exchange. Buyer(s) and Seller agree to cooperate as reasonably necessary to accommodate said exchange, with the understanding that Buyer(s) is obligated to close escrow within the conditions set forth in the Contract (see section 16). The Seller shall not incur any costs, fees, or expenses in conjunction with this exchange. This section does not constitute a contingency on Buyer(s)'s behalf with regard to the disposition of Buyer(s)'s current Property.

Buyer(s) has read, understands and agrees to the contents of this page, which constitutes Page 1
Buyer(s)'s Initials _____ _____

EXHIBIT B

h. *Earnest Money Deposits:* Seller requires an Earnest Money Deposit equal to 4% of the Base Price for financed transactions, 10% of the Base Price for Cash transactions with "cash discount", and 2% of the base price for contingent Cash transactions with an addition 2% due when the contingency is removed. . Buyer(s) electing to finance through C.H. Mortgage, Inc., may Contract with a reduced Earnest Money Deposit in the amount of 2% of the Base Price. Should a Buyer electing to finance with C.H. Mortgage, Inc., initially Contract with 2% Earnest Money, and subsequently choose to obtain financing from another lender (ie.."outside lender"); then the Buyer must immediately produce an additional 2% Earnest Money Deposit or be considered in breach of the Contract and will qualify for remedies stipulated in paragraph #18.

f. Lender changes: Buyer's electing to change mortgage companies from the lender stipulated in paragraph 3b., must remit a non-refundable servicing fee to the Seller in the amount of $250 (46+ days prior to the target closing date), or $500 within 45 days of the target closing date. This fee shall be waived for Buyer's moving from an "outside lender" to C.H. Mortgage, Inc..

j. Buyer(s) understands and agrees that it is Buyer(s)'s sole responsibility to notify the Lender of any adjustments made to the Purchase Price shown in section 1, above. The adjustments are not limited to flooring upgrades, appliance upgrades, and other options and/or upgrades that Buyer(s) chooses to finance. Buyer(s) may be required to deposit additional funds to satisfy the Lender's escrow withhold requirements, as applicable.

k. BUYER(S) TO PROMPTLY EXECUTE FINANCING FORMS. Buyer(s) must, within five (5) days of the date of Buyer(s)'s Offer, make application for a mortgage loan from the Lender (see section 3b). The Buyer(s) agrees to execute and acknowledge in a timely manner all mortgages, deeds of trust, and all other forms, documents, instruments and other papers required by the Lender, the FHA, the VA, and other lending agencies and/or investors. Buyer(s) agrees to pay any fees as due and to complete all documents upon notice from Seller, the Lender, or its agents, and failure on the part of the Buyer(s) to do so within seventy-two (72) hours from receipt of written notice from Seller, the Lender or their agents shall entitle Seller to cancel the Contract and retain all sums as liquidated damages or to pursue any other remedies provided by Section 18 hereof.

l. INTEREST RATE OF LOAN. Buyer(s) understands and acknowledges that interest rates on loans for the purchase of real Property fluctuate, and may increase or decrease prior to close of escrow, and that any such fluctuation in the interest rate or any variation in the terms of the Loan are a matter of concern solely between Buyer(s) and the Lender, and shall not in any way affect the rights or obligations of the parties hereunder.

m. BUYER(S)'S OBLIGATION AND ELIGIBILITY TO OBTAIN LOAN. The proceeds of the Loan shall be paid to Seller or Seller's order. The Loan shall be evidenced by a promissory note secured by a trust deed, which shall be a first lien on the Property. Said note and trust deed shall be in form and content as specified by the Lender, provided, that if the Loan is guaranteed by the VA or Insured by FHA, said note and trust deed shall be in a form satisfactory to VA or FHA, as the case may be. Buyer(s) shall obtain the Loan and Seller shall have no responsibility or obligation in connection, therewith. Buyer(s) represents that, to the best of Buyer(s)'s knowledge, Buyer(s) is qualified to obtain the Loan from the Lender in the amount shown above, and acknowledges and agrees that Seller may proceed in reliance upon said representation and may incur expenses to process the Contract.

n. AUTHORIZATION TO RELEASE FINANCIAL INFORMATION. Buyer(s) hereby authorizes release of any credit and loan status information regarding Buyer(s)'s loan application to D. R. Horton, Inc.                                                      INITIALS

4. SELLER'S ALLOWANCE AND CONCESSIONS

a. *Offer of Seller's Allowance and Discounted Settlement Services.* As per paragraph #5, Seller has an affiliated business arrangement with C.H. Mortgage I, LTD. ("CH Mortgage"). Buyer is not required to use CH Mortgage, an affiliate of Seller, or UNITED TITLE OF NEVADA as a condition of Buyer's purchase of the Property or Buyer's access to settlement services in connection with the purchase of the Property. However, if Buyer does apply to CH Mortgage for a mortgage loan to finance the purchase of the Property and if the loan is funded by CH Mortgage and closed utilizing the settlement services of UNITED TITLE OF NEVADA, Seller agrees to pay on behalf of Buyer, or to provide allowances, discounts or credits to Buyer for, the following costs in connection with the sale and financing of the Property:

   (1) *Allowance.* Buyer has received a Base Price reduction in the amount of $3,750. . Should Buyer obtain financing with another lender, or elect to for go mortgage financing and pay "Cash", this allowance shall be forfeited and added back into the total purchase price prior to close of escrow. This incentive is credited in the Additions & Deletions section of the Addendum To Purchase Contract JIO.

   (2) *Discounted Settlement Services.* Seller agrees to pay up to and not to exceed $ $3,750. towards Buyer's closing costs as a purchase incentive (i.e. "Incentive"). Buyer(s) must obtain financing through CH Mortgage Company I, Ltd., to receive this Incentive. Incentives shall be applied toward Buyer(s)'s closing fees including discount points. If, at anytime prior to the Close of Escrow of the above Property, Buyer(s) decides to pay cash or obtains financing from any source other than CH Mortgage Company I, Ltd., all Incentive will be forfeited by Buyer(s). Any unused Incentive (i.e. Incentive amount in excess of normal closing costs/fees and/or unusable as dictated by loan program guidelines) shall be forfeited at Close of Escrow and shall not be credited to Buyer. Incentive may not be used towards Buyer(s) down payment.

5. NOTICE OF SELLER'S BUSINESS AFFILIATION.

a. Buyer(s) is aware that D. R. Horton, Inc. has a business relationship with CH Mortgage Company I, Ltd. at 8215 S. Eastern, Ste. #103, Las Vegas, NV 89123. The nature of this business relationship is that the two companies are corporate affiliates, each being wholly owned by the same parent corporation. Because of this relationship, a referral to CH Mortgage Company I, Ltd. by D. R. Horton, Inc. may provide D. R Horton, Inc. a financial or other benefit.

b. Following is the estimated charge or range of charges by CH Mortgage Company I, Ltd. for settlement services listed. Buyer(s) is NOT required to use CH Mortgage Company I, Ltd. as a condition of the purchase of the Property from D. R. Horton, Inc. or as a condition of the application for, or settlement of, a mortgage loan on the Property in connection with this purchase. THERE ARE OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES.

c. Loan Origination Fee:        1% of the Loan Amount
   Document Preparation:        $450.00
   (Note: A good faith estimate of all settlement charges will be provided to Buyer(s) at or within three business days after loan application.)

d. CH Mortgage Company I, Ltd. additionally offers a discounted package of settlement services in connection with the purchase and financing of the Property that may entitle the Buyer(s) to one or more settlement services at discounted prices. If Buyer(s) obtains financing through CH Mortgage Company I, Ltd. for a mortgage loan to finance the purchase of the Property, Buyer(s) will be entitled to receive the following package of settlement services at discounted prices:

| Service Provider | Settlement Service | Usual Charge/Fee of Service Provider | Your Benefit Paid By | Your Discounted Price |
|---|---|---|---|---|
| CH Mortgage I, Ltd. | Loan Origination Services | 1% Origination Fee Interest Rate Discount Points, Selected, Prepaid, Closing Costs | Credit in amount stipulated in paragraph 4a.(2) above by Seller | Usual charges less credit as stipulated in paragraph 4a.(2) above |
| | Loan | $450.00 | $55.00/ Paid by | $395.00 |

Buyer(s) has read, understands and agrees to the contents of this page, which constitutes Page 2
Buyer(s)'s Initials _____   _____

| CH Mortgage I, Ltd. | Processing Services | Document Preparation Fee | CH Mortgage Company | | |
|---|---|---|---|---|---|
| CH Mortgage I, Ltd. Approved Appraisers | Appraisal Services | $350.00 FHA, and $300.00 Conventional Appraisal | $50.00 paid by CH Mortgage I, Ltd | $300.00 FHA/ $250.00 Conv | |

6. **HOMEOWNER'S ASSOCIATION; IMPROVEMENT DISTRICT.**

   a. Buyer(s) acknowledges that an association known as Coventry Homes at Anthem Community Association (the "Association") has been established for the purpose of owning, operating and maintaining common areas and facilities of the subdivision in which the Property is located, and that (if applicable) a master association known as __N/A__ ("the Master Association") has been established for the purpose of owning, operating and maintaining common areas and facilities of the master planned community of which the subdivision is a part. Buyer(s) further acknowledges that the current Association assessment on the Property is in the amount of __360.00__ annually, and the current Master Association assessment on the Property is in the amount of __N/A__ / __N/A__. These amounts may be changed or increased by action of the Association or Master Association, respectively. These amounts may be collected monthly, quarterly, semi-annually, or annually as determined by the Association(s).

   b. Buyer(s) acknowledges that Buyer(s) receipt of a copy of the Public Offering Statement and Information Brochure, including the Covenants, Conditions, and Restrictions ("C.C.& R. s"), articles of incorporation, bylaws, rules and regulations and architectural standards (if applicable), and current budget for the Association(s).

   c. Buyer(s) acknowledges that title __will not__ be vested in the Property subject to the Special Improvement District/Local Improvement District Assessments as outlined in the Public Offering Statement and Information Brochure.

   d. Buyer(s) acknowledges that Buyer(s) will become a member of the Association(s) upon Close of Escrow.

7. **SPECIAL RULE – FHA STATEMENT OF APPRAISED VALUE:**

   a. "It is expressly agreed that notwithstanding any other provisions of the Contract, the Buyer(s) shall not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of Earnest Money or otherwise unless the Lender has delivered to the Buyer(s) a written statement issued by the Federal Housing Commissioner or a Direct Endorsement lender setting forth the appraised value of the Property (excluding closing costs) of not less than the Purchase Price of the Property which statement the Lender hereby agrees to deliver to the Buyer(s) promptly after such appraised value statement is made available to the Lender. The Buyer(s) shall, however, have the privilege and option of the proceeding with consummation of the Contract without regard to the amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum Loan Amount the Department of Housing and Urban Development will insure. HUD does not warrant the value nor the condition of the Property. The Buyer(s) should be satisfied that the price and condition of the Property are acceptable."

   b. In any VA purchase, it is expressly agreed that, notwithstanding any other provisions of the Contract, the Buyer(s) shall not incur any penalty by forfeiture of Earnest Money or otherwise be obligated to complete the purchase of the Property described herein, if the purchase price exceeds the reasonable value of the Property established by the VA. The Buyer(s) shall, however, have the privilege and option of proceeding with the consummation of the Contract without regard to the amount of reasonable value established by the VA.

8. **CONTRACT CONTINGENT UPON FINANCING; EXCEPTION.**

   a. The Contract is contingent upon Buyer(s) obtaining financing approval, consistent with section #3 of the Contract, within 45 days of the Buyer's offer. This contingency shall automatically expire and the Contract shall survive in full force and effect on the 46th day subsequent to the Buyer's offer. Buyer(s) acknowledges that Seller does not accept contingency contracts of any kind, other than Buyer(s)'s ability to obtain financing for the acquisition of the Property. The only exception to this policy would be contingencies that are expressly agreed to in section 9 and 19b of the Contract. The emergence of any contingencies other than those agreed in writing may result, at the option of Seller, in the cancellation of the Contract and the forfeiture of Buyer(s)'s Earnest Money and option deposits ("Option Deposit", see section 11.i). In the event Buyer(s) does not qualify for FHA, VA, or Conventional loan financing, then Seller agrees to refund Buyer(s)'s Earnest Money and standard Option Deposits after Seller is notified of such non-qualification evidenced by Seller's receipt of a Statement of Credit Denial, Termination, or Change or a similar document; except that Seller may withhold from such refund a reasonable sum, not to exceed $300, to cover such out-of-pocket expenses as a credit report, processing fees and an appraisal fee.

   b. Subsequent to the 45th day from the Buyer's offer date, should the Buyer be unable to provide evidence of secured mortgage financing (ie..Loan Approval), Seller may, at their sole discretion, cancel the Contract, provide notice of Cancellation to the Buyer and seek liquidated damages pursuant to paragraph 18. In such an event, Escrow Agent shall promptly deliver to Seller the Earnest Deposit without further instruction from the Buyer.

   c. If at anytime, the Seller receives a Statement of Credit Denial, Termination, Loan Declination or similar document from any mortgage lender with which the Buyer has made formal loan application, then Seller reserves the right to cancel the Contract immediately with written notification to Buyer.

   d. Buyer(s) acknowledges that Seller does not accept contingency contracts of any kind, other than Buyer(s)'s ability to obtain financing for the acquisition of the Property. The only exception to this policy would be contingencies that are expressly agreed to in section 9 and 19b of the Contract. The emergence of any contingencies other than those agreed in writing may result, at the option of Seller, in the cancellation of the Contract and the forfeiture of Buyer(s)'s Earnest Money and option deposits ("Option Deposit", see section 11.i). In such an event, Escrow Agent shall promptly deliver to Seller the Earnest Deposit without further instruction from the Buyer.

   e. Seller's receipt of a Statement of Credit Denial, Termination, or Change or similar document issued by the Lender, within 45 days of the date of Buyer(s)'s offer, shall be conclusively deemed to evidence Buyer(s)'s inability to obtain financing and shall be cause for immediate termination by Seller of the Contract; and in such event, Buyer(s) shall be entitled to a refund of provided by Section 8 hereof.

   f. Failure to qualify for mortgage financing as a result of an undisclosed contingency (ie..Buyer(s) purchase Property, does not qualify Buyer for a permitted cancellation (per paragraph 18c) and

9. **CONTINGENCY PRIVILEGE.**

   a. Buyer(s) hereby advises Seller that Buyer(s)'s purchase of the Property is **NOT CONTINGEN** stipulated below in "9b", as denoted by the contingent properties address. Furthermore, Buyer( their current primary residence in the following manner: (Buyer to initial selection)

   __X__ Buyer does not have an ownership interest, and/or leases current residence.

   _____ Buyer shall retain current residence and agrees to pursue, apply and qualify for

   _____ Buyer shall retain current residence and agrees to provide Lender with a lease

Buyer(s) has read, understands and agrees to the contents of this page
Buyer(s)'s Initials _____

*Handwritten note in right margin:* Please initial one of these boxes on page 3/4 – stating what best suits you for NOT being contingent. Thank you.

a. Buyer(s) hereby acknowledges receipt of a copy of NRS 11.202 to 11.206, inclusive, NRS 40.600 to 40.695, inclusive, and sections 2 to 6, inclusive and section 15 of Senate Bill No. 32 (1999), attached hereto.

b. Buyer(s) acknowledges that Seller has notified Buyer(s) of the existence of a soils report for the Subdivision commonly known as: Anthem Heights

c. Said report was prepared by **Geotechnical Environmental Dervices, Inc.**, and dated **Jan. 2, 2001**. Under Nevada law, Buyer(s) is entitled to receive a copy of the soils report, without cost, upon making a written request to Seller within 5 days of the date of Buyer(s)'s Offer. Said request is to be made to: D. R. Horton, Inc., ATTN: Contracts Manager, at 6845 Escondido, Bldg. 6, Suite 105, Las Vegas, NV 89119. Seller shall provide the Buyer(s) a copy of the soils report within five (5) business days after timely receipt of the written request.

_____  11-24-03        _Julie D. Misend_  11-24-03
Buyer(s)'s Signature           Date           Buyer(s)'s Signature        Date

14. **OPTIONAL WAIVER OF RIGHT TO RESCIND:**

Pursuant to NRS 113, Buyer(s) hereby waives Buyer(s)'s right to rescind the Contract with D. R. Horton, Inc. pursuant to subsection 2 of Section 19 of SB 32:

_____  _____        _____  _____
Buyer(s)'s Signature           Date           Buyer(s)'s Signature        Date

15. **WARRANTIES.**

a. Seller makes no warranties, express or implied, about existing or future environmental conditions of the Property, including possible present or future pollution (radon gas included) of the air, water or soil from any sources including underground migration or seepage. Seller's sole warranty to Buyer(s) is the limited home warranty described in section 15b of the Contract. Seller expressly disclaims any direct, indirect or consequential damages which the Property or any person may suffer because of any present or future environmental conditions.

b. Buyer(s) has been provided an opportunity to review a copy of the sample limited warranty and has read and understands the member's warranty administered by Residential Warranty Corporation ("RWC"), including the provision that requires all disputes that arise under the limited warranty to be submitted to binding arbitration. Validation of the RWC limited warranty is not guaranteed, but is conditioned on the satisfactory completion of all required inspections, upon member's compliance with all of RWC's enrollment procedures, and upon member remaining in good standing with the limited warranty program. Buyer(s) understands and agrees that, if the above warranty is validated, it is provided by Seller in lieu of all other warranties, or representations, and Seller makes no warranty, express or implied, as to quality, fitness for a particular purpose, merchantability, habitability or otherwise, except as is expressly set forth in the ten-year limited warranty program or as required by law. Buyer(s) understands and agrees that the warranty of all appliances and other consumer products installed in the home are those of the manufacturer or supplier and same are assigned to Buyer(s), effective on the date of closing. In any event, Seller shall not be liable for any personal injury or other consequential or secondary damages and/or losses that may arise from or out of any and all defects.

c. **RESIDENTIAL CONSTRUCTION RECOVERY FUND**  (NRS 624.400 to 624.560)
Payment may be available from the recovery fund if you are damaged financially by a project performed on your residence pursuant to a contract, including construction, remodeling, repair or other improvements, and the damage resulted from certain specified violations of Nevada law by a contractor licensed in this state. To obtain information relating to the recovery fund and filing a claim for recovery from the recovery fund, you may contact the State Contractors' Board at the following locations:

   State Contractors' Board
   2310 Corporate Circle, Suite # 200
   Henderson, Nevada 89074
   Telephone number: (702) 486-1100

16. **CLOSING.**

a. BUYER(S) ORIENTATION ("WALK-THROUGH INSPECTION") AND CLOSING SCHEDULE.

   (1) Buyer(s) acknowledges that the Seller shall schedule the Walk-through, title appointment, and target close of escrow dates. Seller shall schedule the Walk-through three (3) days prior to the target close of escrow date. All loan documents must be delivered to the Title Company at least 48 hours prior to the Buyer(s) title appointment. The Buyer must sign closing documents at least two business days prior to the target close of escrow date. Closing documents shall be recorded three (3) days after the Walk-though (i.e., target close of escrow date) with the office of the County Recorder. This schedule may only be adjusted by the Seller.
   (2) Within a reasonable period of time following Close of Escrow, any items agreed to by Buyer(s) and Seller at the Walk-through Inspection will be remedied (minor repair and replacement items). Buyer(s) shall be required to notify Seller of any Walk-through Inspection item or defect and comply with the provisions of Chapter 40 of Nevada Revised Statutes prior to making any claim against Seller, its contractors, subcontractors, agents, representations or employees. The existence of any Walk-through Inspection items shall not entitle Buyer(s) to cancel the Contract, withhold funds, or delay Close of Escrow. Failure by Buyer(s) to attend the Walk-through Inspection, shall be deemed a waiver of Buyer(s)'s right to attend a Walk-through Inspection.
   (3) Buyer(s) acknowledges and agrees that Buyer(s)'s Orientation and escrow/title appointment are scheduled through Seller's on-site Sales Agent, at the discretion of Seller. Buyer(s) agrees not to contact the Escrow Agent directly, or to cause Buyer(s)'s agent or representative, if any, to change or schedule title appointments.

b. DOCUMENTATION AND FUNDING. Seller requires that Buyer(s) shall cause loan documents to be available from the Lender within twenty-four (24) hours of written request from Seller. Seller further requires that funding of the Loan occur within twenty-four (24) hours of receipt by the Lender of executed loan documents. It is Buyer(s)'s responsibility to ensure the performance of an Outside Lender specific to these requirements.

c. CLOSING DATE; PENALTY FOR LATE CLOSING. Seller shall construe final inspection and approval of the Property by the appropriate governmental agency to constitute complete performance and its obligation hereunder shall be completed, except for any warranties that may exist. Upon receipt of said approval, Seller shall notify Buyer(s) of a scheduled closing date. If Buyer(s) fails to close escrow within five (5) business days of notice by Seller of completion of the Property, Seller may treat such failure as a default, cancel the Contract and pursue the remedies provided by Section 18 hereof, or Seller may agree to proceed to close the Contract and Buyer(s) shall pay a late fee equal to one hundred dollars ($100) per day (including weekends), beginning the day following the scheduled closing date, until the date of recording of the deed in the County Recorder's office. If Escrow Agent requests additional instructions from the parties, hereto; or if additional instructions are required by FHA or VA regulations, Buyer(s) and Seller shall execute instructions that are consistent with the provisions of the Contract.

d. POSSESSION OF THE PROPERTY. Buyer(s) acknowledges that an exact time for occupancy or completion of the Property has not been promised, and Buyer(s) expressly agrees that possession of the Property shall remain exclusively with Seller until the Close of Escrow. Buyer(s), Buyer(s)'s agents, contractors, subcontractors, representatives or employees may not perform any work or supply any materials relating to any improvement on or about the Property prior to the Close of Escrow. Possession of the Property, including access to a garage, WILL NOT BE GIVEN TO THE BUYER(S) PRIOR TO THE CLOSE OF ESCROW. Buyer acknowledges and understands that the Loan must be recorded in the Office of Clark County Recorder, and the Title Company must release all funds due to Seller. D. R. Horton, Inc. makes NO EXCEPTIONS to this provision. Keys will be available after 4:00pm on the date of recordation of the Property.

Buyer(s) has read, understands and agrees to the contents of this page, which constitutes Page 7
Buyer(s)'s Initials _____    _J.D.M._____

17. **ARBITRATION.** THE CONTRACT IS SUBJECT TO THE NEVADA ARBITRATION RULES GOVERNED UNDER NEVADA REVISED STATUTE CHAPTER 38 AND THE DEFERRAL ARBITRATION ACT. Buyer(s) and Seller agree that any disputes or claims between the parties, whether arising from a tort, the Contract, any breach of the Contract or in any way related to this transaction, including but not limited to claims or disputes arising under the terms of the express limited warranty referenced in Section 15b of the Contract, shall be settled by binding arbitration under the direction and procedures established by the American Arbitration Association "Construction Industry Arbitration Rules" except as specifically modified herein or dictated by applicable statutes including the Nevada Revised Statute Chapter 38 and/or the Federal Arbitration Act. If Buyer(s) does not seek arbitration prior to initiating any legal action, Buyer(s) agrees that Seller shall be entitled to liquidated damages in the amount of ten thousand dollars ($10,000.00). Any dispute arising from the Contract shall be submitted for determination to a board of three (3) arbitrators to be selected for each such controversy. The decision of the arbitrators shall be in writing and signed by such arbitrators, or a majority of them, and shall be final and binding upon the parties. Each party shall bear the fees and expenses of counsel, witnesses and employees of such party, and any other costs and expenses incurred for the benefit of such party. All other fees and expenses shall be divided equally between Buyer(s) and Seller.

18. **BUYER DEFAULT; TERMINATION.**

    a. Without limiting any other right of Seller herein, at law or in equity, it is expressly understood and agreed that each and every thing to be performed by Buyer(s) under the Contract shall be considered a condition. Upon any default on the part of Buyer(s) of any terms or conditions of the Contract (including without limitation, Buyer(s)'s failure to timely execute papers or furnish information requested by a the Lender, Buyer's failure to obtain full loan approval subsequent to the 45th day from Offer date, Buyer(s)'s failure to timely make color, option or other selections, Buyer(s)'s failure to submit timely Option Deposits or pay monies owed Seller including the balance of the Down Payment or Buyer(s)'s failure to timely close escrow), and notwithstanding any provision contained herein to the contrary, Seller may, at its sole option, (1) forfeit and terminate the Contract, in which event Seller shall declare the Contract forfeited, and all rights of Buyer(s) hereunder shall thereupon cease and terminate and all sums of money paid hereunder, including but not limited to Option Deposits and Earnest Money, shall be forfeited to and retained by Seller as liquidated damages, for lost profits and for expenses incurred while holding the Property off of the market; In such an event, Escrow Agent shall promptly deliver to Seller the Earnest Deposit without further Instruction from the Buyer; (2) consider the Contract as continuing and may enforce same either by specific performance or other appropriate remedy; (3) bring suit for damages for breach of contract; (4) pursue any other remedy at law or in equity. Should Seller institute suit in connection with the Contract, Seller shall be entitled to recover all costs and expenses incurred in connection therewith, including reasonable attorney's fees.

    b. **DESTRUCTION.** In the event of destruction of the Property by fire, earthquake, explosion, hail, windstorm or any other casualty prior to the Closing Date, Seller may terminate the Contract and return all Buyer(s)'s funds on deposit, and no cause of action shall accrue on behalf of Buyer(s) because of such termination.

    c. **"PERMITTED CANCELLATIONS".** AS A POINT OF CLARIFICATION AND REITERATION, THE FOLLOWING ARE EXAMPLES OF OCCURRENCES IN WHICH SELLER COULD OR WOULD CAUSE TERMINATION OF ALL OBLIGATIONS OF THE PARTIES UNDER THIS AGREEMENT BY WRITTEN NOTICE TO BUYER(S). IN SUCH EVENT, SELLER SHALL <u>REFUND</u> BUYER'S EARNEST MONEY AND OPTION DEPOSIT(S):

    (1) Seller's receipt of a Statement of Credit Denial, Termination, or Change, or similar notice of the Lender noted in section 3b, above, within forty-five (45) days of the date of Buyer(s)'s offer; or
    (2) Upon Seller's receipt of written notice from the Buyer(s) of Buyer(s)'s decision to cancel the Contract by midnight of the fifth calendar day following the date of execution of the Contract by Buyer(s), if the Property is a part of a common-interest community and is subject to the provisions of the Uniform Common Interest Ownership Act (Chapter 116 of Nevada Revised Statutes) and if Buyer(s) has not personally inspected the Property; or
    (3) If the appraised valuation made by the Federal Housing Commissioner with respect to an FHA loan, or the reasonable value established by the Veterans Administration for a VA loan, is less than the total purchase price; or
    (4) If Seller has defaulted in its obligations under the terms of the Contract and Buyer(s) has complied with all requirements of the Contract, Buyer(s) may cancel the Contract and receive a refund of the Earnest Money and Option Deposit. The Permitted Cancellation provisions set forth in this Section are the sole method and means for cancellation of Buyer(s)'s and Seller's obligations hereunder by Buyer(s). A Permitted Cancellation shall be deemed to be a cancellation of escrow and any related document or agreement between Buyer(s) and Seller. A Permitted Cancellation shall only be effective upon written notice to the non-canceling party and to the Escrow Agent. In the event of a Permitted Cancellation, Seller shall return to Buyer(s), without interest, all sums deposited by Buyer(s) as Earnest Money and Option Deposits toward the Purchase Price, and Buyer(s) shall have no right, title or interest in and to the Unit. Seller shall not return monies identified as "non-refundable", such as deposits paid for custom and/or late options. Buyer(s) shall execute all documents requested by Seller or Escrow Agent to document a cancellation.

    d. **"NON PERMITTED CANCELLATIONS".** AS A POINT OF CLARIFICATION AND REITERATION, THE FOLLOWING ARE EXAMPLES (AND NOT DEEMED A COMPLETE LIST) OF OCCURRENCES THAT COULD OR WOULD CAUSE SELLER TO TERMINATE ALL OBLIGATIONS OF THE PARTIES UNDER THIS AGREEMENT BY WRITTEN NOTICE TO BUYER(S). IN SUCH EVENT, SELLER SHALL <u>RETAIN</u> ALL BUYER(S)'S FUNDS ON DEPOSIT, SUBJECT TO SECTION 18a HEREOF:

    (1) If Buyer(s) fails or refuses to verify to Seller's reasonable satisfaction that Buyer(s)'s cash funds will be available on the estimated date of Close of Escrow; or
    (2) In the event of a financed transaction, Buyer(s)'s inability to obtain a mortgage loan based solely on the fact that Buyer(s) is unable to produce the required funds to sufficiently cover the Down Payment, closing costs, and impounds, as outlined in section 3c, above. (Example: A Statement of Credit Denial, Termination, or Change showing a reason of "Insufficient Funds to Close").
    (3) In the event of a financed transaction, Buyer(s)'s failure to apply for a mortgage loan with the Lender specified herein within the time frame specified in section 3h hereof; or
    (4) In the event of a financed transaction, Buyer(s)'s failure to supply the Lender with the necessary information and/or documentation to submit the loan for approval within the time frame specified in section 3i hereof; or
    (5) In the event of a financed transaction, Seller's receipt of a Statement of Credit Denial, Termination, or Change from the Lender, forty-six (46) or more days after acceptance of the Contract by Seller; or
    (6) Buyer(s)'s failure to close escrow within 5 days of notification from Seller of completion of the Property; or
    (7) Buyer(s)'s failure to make any payment required hereunder promptly when due, or fails to perform, timely, any obligations under the Contract; or
    (8) Emergence of an undisclosed contingency on the part of the Buyer(s); or
    (9) Buyer(s)'s request to cancel the Contract for reason of fluctuating interest rates; or
    (10) Buyer(s)'s request to cancel the Contract due to Buyer(s)'s required relocation by Buyer(s)'s employer; or
    (11) Buyer(s)'s request to cancel the Contract due to a change in familial status.

    If Seller elects to terminate the Contract pursuant to this section 18d then, upon delivery of written notice of termination to Buyer(s), Buyer(s) shall execute any and all documents and take all actions as may be required by Seller or Escrow Agent to terminate the escrow and release all sums owed to Seller.

19. **MISCELLANEOUS PROVISIONS.**

    a. **CONTRACT NOT ASSIGNABLE.** In the absence of express written approval by Seller, Buyer(s) agrees that Buyer(s) may not assign this Offer and Acceptance Agreement, in whole or in part, or Buyer(s)'s rights pursuant to the Contract, in whole or in part, and that any violation by Buyer(s) of this section may be construed by Seller as a substantial breach of the Contract.

Buyer(s) has read, understands and agrees to the contents of this page, which constitutes Page 8
Buyer(s)'s Initials _____ _____

b. **SELLER'S CONTINGENCIES.** The Contract is contingent upon acquisition of the Property by Seller and, unless written as a "back-up offer", is null and void if Seller has executed any prior contract affecting the Property. Should Seller not acquire the Property or have executed any prior contract relating to the Property, Seller shall return all Earnest Money and upgrade/option deposits to Buyer(s), and Seller shall have no further liability to Buyer(s).

c. **PRORATIONS.** Any taxes, rents, or maintenance fees of special assessments shall be prorated to the Closing Date.

d. **DISPUTES.** Notwithstanding any of the above, in the event that a bona fide dispute should arise between Buyer(s) and Seller prior to the Closing Date, and such dispute cannot, in good faith, be resolved completely and to the mutual satisfaction of all parties within ten (10) days after the beginning of the dispute, then Seller shall have the right, upon written notice to Buyer(s), to terminate the Contract and return the Earnest Money to Buyer(s), and no cause of action shall accrue on behalf of Buyer(s) because of such termination. Should Buyer(s) fail or refuse to carry out Buyer(s)'s obligations under the Contract, Seller may, at is option: (i) terminate the Contract and keep all Deposit Money as liquidated damages, and each party shall be released of any further obligations of the Contract. In such an event, Escrow Agent shall promptly deliver to Seller the Earnest Deposit without further instruction from the Buyer; (ii) seek specific performance of the Contract and retain all Deposit Money. In such an event, Escrow Agent shall promptly deliver to Seller the Earnest Deposit without further instruction from the Buyer; or (iii) seek such other relief as may be provided by law. Seller shall be entitled to recover from Buyer(s) Seller's fees and expenses, including attorneys' fees in pursuing any remedy provided by the Contract. The pursuit of one remedy by Seller shall not prohibit Seller from electing, at any time, any other remedy.

e. **ENTIRE AGREEMENT.** The Contract constitutes the entire agreement between the parties, and all prior negotiations, promises and/or representations, whether verbal or written, not expressly set forth herein are of no force and effect and do not constitute a part of the Contract. Buyer(s) represents to Seller that Buyer(s) has not relied, and is not relying upon any warranties, promises, guarantees, or representations made by Seller, any agent of Seller, or any third party or anyone else acting or claiming to act on behalf of Seller with respect to the purchase of the Property, except as contained in the Contract. No amendment or modification of the Contract shall be enforceable unless made in writing and signed and initialed by the parties.

f. **SUCCESSORS AND ASSIGNS.** The Contract and all the terms and provisions hereof shall be binding upon and inure to the benefit of the respective parties, their successors, assigns, personal representatives and heirs.

g. **BUYER(S)** agrees that neither the Contract nor any memorandum of any kind shall be recorded in the real Property records of the County in which the Property is located. Buyer(s) agrees, if Buyer(s) attempts any recordation, that Seller may elect to terminate the Contract at which time the Contract will become null and void.

h. **CAPTIONS.** The headings of all sections of the Contract shall not form a part of the Contract but shall be regarded as having been used for the convenience of reference only.

i. **CHOICE OF LAW.** The Contract shall be construed in accordance with the laws of the State of Nevada.

j. **TIMELY PERFORMANCE.** Buyer(s) hereby acknowledges and agrees that time is strictly of the essence with respect to each and every term, condition, obligation and provision hereof applicable to Buyer(s) and that failure to timely perform any of the conditions, obligations or provisions hereof shall constitute a material breach of the Contract by Buyer(s) and a default under the Contract.

k. **NOTICES.** Any notice to be given or served upon any party hereto in connection with the Contract must be in writing and shall be deemed to have been given and received three (3) days after a certified or registered letter containing such notice, properly addressed, with postage prepaid, is deposited in the United States mail; and if given otherwise than by registered or certified mail, it shall be deemed to have been given when delivered to and received by the party to whom it is addressed. All notices to be given shall be given to the parties at the addresses set forth on the Contract.

l. **VALIDITY.** In the event that any provision of the Contract shall be held to be invalid or unenforceable, the same shall not affect in any respect whatsoever the validity or enforceability of the remainder of the Contract.

m. **THIRD PARTIES.** Buyer(s) acknowledges and agrees that Seller has relied upon written information relating to the Property obtained from third parties, including, but not limited to, the prior owners of the Property, professional engineers and governmental entities, in the design, development, inspection, approval and construction of the Property. Buyer(s) further acknowledges and agrees that Seller has also relied upon various warranties and representations of suppliers and subcontractors in connection with the materials and workmanship, which are or will be included in the Property.

n. **CLEAR TITLE.** Title to the Property shall pass free and clear of any encumbrances to the Buyer.

20. **CO-BROKE COMMISSIONS**
Upon Close of Escrow, a __2%__ commission (plus an additional fee of $0.00 ), (Plus an additional 1% if Buyer obtains financing from C.H. Mortgage or pays Cash exclusively ), computed on the base Contracts price of __$379900.00__, is payable to:

|            |                                      |
|------------|--------------------------------------|
| BROKER:    | Prudential Americana Group Realtors  |
| ADDRESS:   | 871 Coronado Center                  |
|            | Ste. #100                            |
|            | Henderson, NV 89052                  |
| AGENT:     | Sharon Menary                        |
| PHONE (1): | (702) 257-0766                       |
| PHONE (2): | (702) 376-7007                       |
| COOP%:     | 2% + $0.00                           |
| EMAIL:     | sharonmenary@cox.net                 |

Buyer's Agent SIGNATURE( REQUIRED): _/s/ Menary_    Date: __11/22/03__

21. **ADDENDUMS.**
The following Addendums and/or attachments are hereby incorporated into the Contract. Buyer(s) and Seller acknowledge that the documents listed below are made a part of this agreement: (See Below)

- [ ] Job Initiation Order / Change Order
- [ ] Agency Disclosure (Duties Owed)
- [ ] CC&Rs
- [x] Public Offering Statement
- [x] Common Interest Community Disclosure
- [x] Zoning Disclosure & Map
- [x] Gaming Disclosure & Map

22. **OFFER AND ACCEPTANCE**

Buyer(s) has read, understands and agrees to the contents of this page, which constitutes Page 9
Buyer(s)'s Initials _____ _____