**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| PATRICE AND JULIE MISSUD, | No. C 07-2625 SBA |
| Plaintiffs, | **ORDER** |
| v. | [Docket Nos. 6, 24, 29, 30] |
| D.R. HORTON, ET AL., | |
| Defendants. | |

Before the Court is a motion to dismiss [Docket No. 6] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by defendants D.R. Horton, Inc., DHI Mortgage Company Ltd. and the six individuals named in the complaint. After reading and considering the arguments presented by the parties, the Court finds this matter appropriate for resolution without a hearing. *See* FED. R. CIV. P. 78. For the reasons that follow, the defendants' motion to dismiss is hereby GRANTED.

**BACKGROUND**

This case arises out of the purchase of a single family home in Nevada in November 2003 by the plaintiffs, Patrice and Julie Missud. The defendants are D.R. Horton, Inc. (Horton), a large corporate homebuilder, its mortgage subsidiary DHI Mortgage Company, Ltd. (DHI), and six individuals associated with one or both of these companies.

On November 11, 2003, Patrice and Julie Missud entered into a written sales contract with Horton for the purchase of a residence at 1353 Romanesca Drive in Henderson, Nevada. *See* Docket No. 10, Ex. A. The agreement required a down payment of approximately $40,000 and the procurement of a loan of around $362,000. *Id.* In February 2004, Patrice Missud received a letter from DHI, Horton's mortgage subsidiary, stating he was not fulfilling the loan terms of his purchase agreement. *See* Docket Nos. 9, Ex. A; 7, Ex. JN1. The letter provided notice that, if Missud could not provide Horton or DHI with proof they were approved for a mortgage loan, he might put his deposit money at risk. *See* Letter from Horton to Patrice Missud (Docket No. 9, Ex. A). Although it

1  is unclear whether Missud used DHI or an outside lender to secure his loan, Missud states in his
2  complaint that he "fully performed under the terms of the Contract," and there is no evidence in the
3  record that Missud in fact lost any portion of his initial deposit. *See* Docket No. 1 at 22.

4        On August 22, 2005, Missud filed a complaint in San Francisco Superior Court alleging
5  intentional infliction of emotion distress, claiming the defendants' letter caused him "severe
6  abdominal pain and nausea for which he was intravenously administered narcotics for approximately
7  4 hours." Compl. at 2, *Missud v. Horton*, *et al.,* No. 05-444247 (filed Aug. 22, 2005). The
8  defendants responded by filing a motion to quash service or, in the alternative, a motion to dismiss
9  on the ground of *forum non conveniens*, based on the argument that all the events giving rise to the
10 claim occurred in Nevada. Ross Decl., ¶ 3. After Missud failed to respond to the defendants'
11 motion, San Francisco Superior Court James Warren ordered the entire case dismissed without
12 prejudice on November 9, 2005. Nov. 9, 2005 Order, *Missud v. Horton, et al.,* No. 05-444247.

13       On December 9, 2005, Missud refiled his emotional distress complaint in San Francisco
14 Superior Court. Compl., *Missud v. Horton, et al.*, No. 05-447499 (filed Dec. 9, 2005). The
15 defendants again filed a motion to quash service that was sustained as to all defendants except
16 Horton, which agreed to waive service to reach the merits of whether the court had personal
17 jurisdiction over Horton. On April 25, 2006, Judge Warren sustained the defendants' motion to
18 quash service and again ordered the case dismissed without prejudice as to Horton, based on lack of
19 personal jurisdiction. April 25, 2006 Order, *Missud v. Horton, et al.*, No. 05-447499. Missud
20 continued filing a variety of motions until the San Francisco Superior Court finally ordered the
21 entire case dismissed on January 11, 2007. Jan. 11, 2007 Order, *Missud v. Horton, et al.*, No. 05-
22 447499.

23       On October 23, 2006, several months before the dismissal of Missud's second emotional
24 distress complaint, Missud and his wife filed a third lawsuit against the same defendants, this time
25 alleging two counts of fraud, intentional misrepresentation, breach of fiduciary duty, declaratory
26 relief and restitution. Compl., *Missud et al. v. Horton, et al.*, No. 06-457207 (filed Oct. 23, 2006).
27 The defendants once again filed a motion to quash, which was granted by Judge Busch on February
28

15, 2007. On the same day, the court ordered Missud's entire case dismissed, and also ordered the defendants' motion to declare Missud a vexatious litigant to be taken off calender in light of the court's ruling on the motion to quash. Feb. 15, 2007 Order, *Missud et al. v. Horton, et al.*, No. 06-457207.

Missud then filed the present complaint in federal district court on May 17, 2007. *See* Docket No. 1. In addition to the claims alleged in the three state court suits, Missud also alleges retaliation under 18 U.S.C. § 1513 based upon his allegation that the defendants have interfered with his contracting and legal practices by contacting the Nevada agency regulating engineers and the California State Bar. *Id.; See* Docket No. 20 at 8. Missud is licensed to practice law in the state of California. *See* Docket No. 21, ¶ 1.

**LEGAL STANDARDS**

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a complaint for lack of personal jurisdiction. The exercise of personal jurisdiction over a nonresident defendant must be pursuant to constitutional principles of due process and the law of the state where the district court sits. *Sher v. Johnson*, 911 F.2d 1357, 1360-61 (9th Cir. 1990). California Code of Civil Procedure section 410.10, governing personal jurisdiction, is coextensive with federal due process requirements, meaning that the Court may exercise personal jurisdiction to the full extent allowed by constitutional due process principles.[1] *See Dole Food Co. v. Watts*, 303 F.3d 1104, 1110 (9th Cir. 2002); *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995). Under the Due Process Clause, a nonresident defendant must have sufficient minimum contacts with the forum state such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006); *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1169 (9th Cir. 2006), *cert. denied*, 127 S. Ct. 723 (2006). This means that the defendant's conduct and connection with the forum state must be such

---

[1] The California statute states that "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." CAL. CODE CIV. PROC. § 410.10.

3

that the defendant should reasonably anticipate being haled into court there. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

The plaintiff has the burden of proving that the Court has personal jurisdiction over the defendant. *Pebble Beach*, 453 F.3d at 1154; *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). If the Court rules without holding an evidentiary hearing, dismissal for lack of personal jurisdiction is appropriate only if the plaintiff has not made a prima facie showing of personal jurisdiction. *Tuazon*, 433 F.3d at 1168; *Myers v. Bennet Law Offices*, 238 F.3d 1068, 1071 (9th Cir. 2001). Although the plaintiff cannot simply rest on the bare allegations of his complaint, uncontroverted allegations in the complaint must be taken as true in determining whether the plaintiff has made a prima facie showing of personal jurisdiction. *Schwarzenegger*, 374 F.3d at 800; *American Tel. & Tel.*, 94 F.3d at 588-89. Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor. *Schwarzenegger*, 374 F.3d at 800; *see also Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 862 (9th Cir. 2003) ("Unless directly contravened, [the plaintiff's] version of the facts is taken as true, and conflicts between facts contained in declarations submitted by the two sides must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists").

**ANALYSIS**

**A.   Personal jurisdiction**

There are two types of personal jurisdiction, specific and general, either of which will sustain the exercise of personal jurisdiction over a defendant. *See American Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996); *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 587 (9th Cir. 1993). A court may exercise specific jurisdiction where the suit arises out of or is related to the defendant's contacts with the forum and the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Tuazon*, 433 F.3d at 1169. In a controversy unrelated to a defendant's contacts with the forum, a court may exercise general jurisdiction only where the defendant has substantial or continuous and systematic contact with the

4

1 state. *See Tuazon*, 433 F.3d at 1169; *Easter v. American West Fin.*, 381 F.3d 948, 960 (9th Cir. 2004).

### 1. Horton and DHI

The defendants contend they do not have sufficient contacts with California to support the conclusion they have purposely directed their business to the forum state or purposely availed themselves of California law. Horton is a Delaware corporation with its headquarters in Texas, and conducts business in Nevada but not in California. *See* Docket No. 10 at ¶ 3. Horton's vice president and legal counsel states that Horton has no offices in California. *Id.* Likewise, DHI is a Texas limited partnership that, at the time it worked on procuring Missud's mortgage loan, was operating under the name CH Mortgage Company I, Ltd., which transacted business only in Nevada. *See* Docket No. 10, ¶ 6.

Missud offers two arguments to sustain his burden of showing this Court has personal jurisdiction over Horton and DHI. The first is that both companies "are residents and do business within the Ninth Circuit in Nevada." Docket No. 1 at 2. This argument fails because the territorial region of the Ninth Circuit has no bearing upon the test of whether a nonresident defendant has sufficient minimum contacts *with the forum state* such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006); *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1169 (9th Cir. 2006), *cert. denied*, 127 S. Ct. 723 (2006) (emphasis added). It is the state of California that represents the forum in this case – not the territory within the Ninth Circuit.

Missud's second argument supporting personal jurisdiction for Horton and DHI relies on his statement that "the corporate Defendants have contracted with over 40 California consumer residents." Docket No. 20 at 7. Although Missud does not dispute that these transactions have no relation to the incidents giving rise to this claim, the plaintiff can still establish general personal jurisdiction by showing the nonresident defendants have substantial or continuous and systematic contact with the state. *See Tuazon*, 433 F.3d at 1169; *Easter v. American West Fin.*, 381 F.3d 948, 960 (9th Cir. 2004).

Missud's bald assertion, however, lacks any evidentiary support. Nothing in the record, such as a declaration or affidavit, sheds light on whether these "40 California consumer residents" even exist, let alone whether they transacted with the defendants in a substantial or continuous and systematic way. Therefore Missud fails to sustain his burden to show this Court has personal jurisdiction over the two corporate defendants, and the motion to dismiss must be granted in favor of Horton and DHI.

### 2. The six individual defendants

Missud also claims this Court has personal jurisdiction over six individuals associated with either Horton or DHI. *See* Docket No. 1 at 2. Annie Schankin, Michael Mason and Daniel Callihan, three defendants employed by either Horton or DHI, work and reside in Nevada, and have no contacts at all with California. *See* Docket Nos. 12 at 2; 9 at 2; 13 at 2. Missud alleges other California families, the "Yoons" and the "Songs," had direct contacts with Schankin, Mason and Callihan during negotiations for their own home purchases. *See* Docket No. 20 at 9. But Missud offers no proof of these contacts. Since Missud fails to offer any evidence rebutting the lack of minimum contacts between California and Schankin, Mason and Callihan, these three defendants must be dismissed from the complaint for lack of personal jurisdiction.

A similar scenario exists for the three corporate officers named in the complaint: Donald Horton, Donald Tomnitz and James Frasure. Horton is the Chairman of the Board of Directors of Horton, Tomnitz is Horton's Chief Executive Officer and Frasure is the president of Horton's Las Vegas division. *See* Docket Nos. 10, ¶ 9; 11, ¶ 1. Neither Horton nor Tomnitz had any involvement in Missud's real estate transaction, nor does either man reside or work in California. *See* Docket No. 10, ¶ 9. Likewise, Frasure lives and works in Nevada, and had no involvement in the day-to-day handling of Missud's real estate and mortgage transactions. *See* Docket No. 11, ¶¶ 2-3. As with the other individual defendants, Missud offers no proof that Horton, Tomnitz or Frasure had any contacts with California. Missud's conclusory statements in his opposition papers, such as "[a]ll Board members inclusive of both Tomnitz and Horton are responsible for the contents of their contracts to which they systematically and continuously bind California consumers and other

6

consumers nationwide," fail to establish any facts supporting this Court's personal jurisdiction over these defendants. For these reasons, the motion to dismiss is granted in favor of the six individual defendants.

**B.      Forum non conveniens**

The defendants argue that even if personal jurisdiction exists, the complaint should be dismissed on the grounds of forum non conveniens. A district court has discretion to decline to exercise jurisdiction in a case where litigation in a foreign forum would be more convenient for the parties. *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1177 (9th Cir. 2006) (quoting *Lueck v. Sundstrand Corp.,* 236 F.3d 1137, 1142 (9th Cir. 2001); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504 (1947)). In dismissing an action on forum non conveniens grounds, a court determines 1) whether an adequate alternative forum exists, and 2) whether the balance of private and public interest factors favors dismissal. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002); *Lueck*, 236 F.3d at 1142 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n. 22, 257 (1981); *Gulf Oil*, 330 U.S. at 507-09; *Ceramic Corp. of America v. Inka Maritime Corp.*, 1 F.3d 947, 949 (9th Cir.1993).

The private interests considered in determining whether to dismiss a case on forum non conveniens grounds include 1) the relative ease of access to sources of proof, 2) the availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining attendance of willing ones, 3) the possibility of viewing premises, if appropriate and 4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Menken v. Emm*, WL 2713139 (9th Cir. 2007) (quoting *Gulf Oil*, 330 U.S. at 508); *see Altmann v. Republic of Austria*, 317 F.3d 954, 973 (9th Cir. 2002). Public factors include administrative difficulties from court congestion; the local interest in having local controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws; and the unfairness of burdening citizens in an unrelated forum with jury duty. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981); *Lueck*, 236 F.3d at 1147.

7

In this case, an adequate alternative forum exists in Nevada because all corporate and individual defendants are subject to personal jurisdiction in that state. An important private interest to consider in this case – perhaps the most important one – is the "relative ease of access to sources of proof." *Gulf Oil*, 330 U.S. at 508. Nine of out of ten of Missud's claims involve state causes of action related to fraud, breach of contract, breach of fiduciary duty and personal injury. *See* Docket No. 1. By their nature, these claims place significant focus on the representations of the individual employees of Horton and DHI, and their interactions with Missud. All of these employees or former employees reside in Nevada. As noted above in the discussion of personal jurisdiction, the defendants' residence in the territory of the Ninth Circuit is irrelevant when considering the difficulty in compelling witnesses to appear in a California district court. Missud's assertion to the contrary that "this Court can compel the availability of all witnesses, willing or not" is a misstatement of law. *See* Docket No. 20 at 14.

Additionally, the state of Nevada has a far greater interest than California in suits involving the conveyance of real property located in Nevada. The Nevada brokers, loan agents and real estate agents involved in Missud's transaction are all regulated by Nevada law. In his complaint, Missud himself premises his fourth case of action, for breach of fiduciary duty, on Nevada state law. *See* Docket No. 1 at 21. The purchase contract signed by Missud states that the agreement "shall be construed in accordance with the laws of the State of Nevada." *See* Docket No. 10, Ex. A, Section 19(I).

For the reasons stated above, the district court in Nevada that presides over the region including the real property that is the subject of this transaction is a more proper forum than this Court. The defendants' motion to dismiss is granted on the grounds of forum non conveniens.

**C. Statutes of limitations**

A statute of limitations defense may be properly raised in a Rule 12(b)(6) motion. *Hyatt Chalet Motels, Inc. v. Carpenters Local,* 1065 430 F.2d 1119, 1120 (9th Cir. 1970); *Suckow Borax Mines Consol. v. Borax Consol.*, 185 F.2d 196, 204 (9th Cir. 1951). Where there is no specific federal statute, federal courts will apply the state statute of limitations. *Intl. Union of Operating*

8

*Engineers v. Fischbach and Moore, Inc.*, 350 F.2d 936, 938-939 (9th Cir. 1965).

### 1. The fraud claims

The defendants argue that Missud's first three causes of action -- for fraud in the inducement, fraudulent concealment and intentional misrepresentation -- should be barred by the applicable state statutes of limitations. In California, a plaintiff must bring an action within three years "for relief on the ground of fraud or mistake."[2] Cal. Code Civ. P. 338(d). The statute begins to run when "the plaintiff discovers, or reasonably should discover, the underlying facts to his cause of action." *Solomon v. North American Life and Cas. Ins. Co.*, 151 F.3d 1132, 1138 (9th Cir. 1998).

Missud alleges in his complaint that on February 19, 2004, "D.R. Horton Inc. received Plaintiffs' certified, return receipt letters detailing the extensive fraud regarding the transaction of the property." Docket No. 1 at 6. In his opposition to the defendants' motion to dismiss, Missud explains that "since allegations for fraud must be pled with 'particularity' as per FRCP Rule 9, the Plaintiff intentionally did not at that time claim any fraud." Docket No. 20 at 11. Essentially Missud concedes that, while he was aware of facts constituting an action of fraud as early as February 2004, he made a conscious decision not to file a suit at that time based on his interpretation of a procedural court rule. Federal Rule 9, which governs how a fraud claim must be pled, has no relation to the rule governing when the statute of limitations begins running on a state fraud claim. Since Missud has admitted he was aware of facts constituting fraud as far back as February 2004, and he filed the present action on May 17, 2007, California law bars his fraud-based claims in this suit.

### 2. Emotional distress claims

Defendants also argue that Missud's sixth and seventh causes of action, for intentional infliction of emotional distress and negligent infliction of emotional distress, are likewise barred by the applicable statute of limitations. California law sets two years as the period for emotional

---

[2]Defendants acknowledge they have not done a choice-of-law analysis to determine if the contract is governed by Nevada or California law. The limitations period, however, is the same in both states for claims of fraud. Nev. Rev. Stat. § 11.190(3)(d). The periods are also the same for emotion distress claims. Nev. Rev. Stat. § 11.190(4)(e).

9

1  distress claims. Cal. Code Civ. P. 335(1); *Pugliese v. Superior Court*, 146 Cal. App. 4th 1444, 1450
2  (Cal. Ct. App. 2007). In emotional distress claims, "the statute of limitations begins to run once the
3  plaintiff suffers severe emotional distress as a result of outrageous conduct on the part of the
4  defendant." *Cantu v. Resolution Trust Corp.*, 4 Cal. App. 4th 857, 889 (Cal. Ct. App. 1992).
5       In February of 2004, Missud alleges he received a letter from the defendants that caused him
6  "severe emotional distress, aggravating his normally benign congenital condition which required
7  immediate medical intervention within three hours [sic] receipt of letter." Compl. at 24. Thus while
8  Missud concedes that his personal injury occurred in February 2004, he did not file the present
9  complaint until May 2007, long after the applicable statute of limitations had run. Missud offers no
10 legal support for his contention that his ongoing injury, in the form of kidney stones caused by the
11 emotional distress initiated by the defendants, bars application of the statute of limitations. When a
12 plaintiff alleges a continuing violation, "an overt act by the defendant is required to restart the statute
13 of limitations and the statute runs from the last overt act." *Columbia Steel Casting Co., Inc. v.*
14 *Portland General Elec. Co.*, 111 F.3d 1427, 1444 (9th Cir. 1996) (quoting *Pace Industries, Inc. v.*
15 *Three Phoenix Co.*, 813 F.2d 234, 240 (9th Cir. 1987)). Accordingly, Missud's emotional distress
16 claims must be dismissed as barred by California law.
17      Finally, prior judicial actions "do not toll the statute of limitations, no matter how close their
18 relationship to the one at bar." *Pace Industries,* 813 F.2d at 240.

19 **D.     Defendants' objections to plaintiffs' evidence**
20      The defendants objected to certain parts of Missud's declaration and to two pieces of
21 evidence: 1) a San Francisco police report detailing an act of vandalism to Missud's car, and 2) a
22 declaration by Missud related to a letter he received from Horton stating it would contact the
23 California State Bar Association if Missud continued the activities alleged in the letter. *See* Docket
24 Nos. 29, 30. Neither of these pieces of evidence has any bearing on the narrow question of whether
25 this Court can exercise personal jurisdiction over the defendants. Horton's letter stating what it
26 might do in the future fails to shed any light on whether it has sufficient minimum contacts with the
27 state of California. Additionally, the parts of Missud's declaration objected to by the defendants
28

were not considered in this discussion. For these reasons, this evidence was not considered and the defendants' objections are overruled as moot.

**CONCLUSION**

Accordingly, defendants' motion to dismiss [Docket No. 6] pursuant to Rule 12(b)(6) is GRANTED. Defendants' objections to plaintiffs' evidence [Docket Nos. 24, 29, 30] are OVERRULED as moot.

IT IS SO ORDERED.

October 30, 2007

*Saundra B Armstrong*

Saundra Brown Armstrong

United States District Judge

11